**Melvin BRAVERMAN, Plaintiff,**

v.

**PENOBSCOT SHOE COMPANY and Paul Hansen, Defendants.**

**Civ. No. 93–0186–B.**

United States District Court,
D. Maine.

July 28, 1994.

Peter Bennett, Herbert H. Bennett & Associates, P.A., Portland, ME, Jerome B. Goldsmith, Linscott, Slater & Goldsmith, Bangor, ME, for plaintiff.

John W. McCarthy, Rudman & Winchell, Bangor, ME, for defendants.

## ORDER AND MEMORANDUM OF OPINION

BRODY, District Judge.

The Penobscot Shoe Company (the "Company") employed Plaintiff, Melvin Braver-man, between March 7, 1983 and September 30, 1992. Braverman held three positions at the Company: Director of Marketing and Sales, Vice President of Marketing and Sales, and Vice President of Sales. Paul Hansen was at all relevant periods president of the Company.

In 1987, Braverman had a heart attack that restricted his ability to work until early 1988 when he returned to full-time work without impairment.

Hansen notified Braverman that Defendants were terminating him on August 3, 1992, effective September 23, 1992. August 3rd was Braverman's first day back to work following a leave in which he received radiation treatment for prostate cancer, and four days shy of his 65th birthday. Braverman continued to work at the Company until September 23rd, and the Company paid his salary through the end of the year.

Braverman filed this action against the Company and Hansen in July 1993. Braverman's Complaint alleges that the Defendants unlawfully discriminated against him on the basis of age and disability, and intentionally and negligently caused him emotional distress. The Defendants have each moved for summary judgment on all counts of the Complaint.[1]

### I. Summary Judgment Standard

Summary judgment is appropriate if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is inappropriate where "there is a dispute 'over facts that might affect the outcome of the suit.'" *Menard v. First Sec. Servs. Corp.*, 848 F.2d 281, 285 (1st Cir.1988) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The Court must draw "all justifiable inferences in favor of the nonmoving party,

---

1. Plaintiff has filed a motion to strike Defendants' summary judgment motions. Plaintiff's motion is denied. Defendants did not violate Local Rule 19.

including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, ——, 111 S.Ct. 2419, 2435, 115 L.Ed.2d 447, 475 (1991).

## II. Age Discrimination

Count I of Braverman's Complaint alleges that Defendants violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA") when Hansen fired Braverman.

### A. The merits

■ Braverman has not provided direct evidence of age discrimination. He, therefore, must follow the framework that the Court utilizes when determining whether age discrimination occurred through indirect evidence, the so-called *McDonnell Douglas* framework. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014–15 (1st Cir.1979); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621–22, 83 L.Ed.2d 523 (1985) (*McDonnell Douglas* framework appropriate only when direct evidence does not exist).

#### 1. Prima facie case

■ Under the *McDonnell Douglas* framework, Braverman must first present a *prima facie* case. A *prima facie* case consists of evidence that Braverman was in the protected age group, that he was performing his job at a level that met Defendants' legitimate expectations, that he was fired, and that Defendants replaced him with someone with roughly equivalent job qualifications. *Loeb*, 600 F.2d at 1014; *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

■ Construing the facts in the light most favorable to Braverman, the Court finds that Braverman has established a *prima facie* case sufficient to survive summary judgment.

*a. Protected class.* Braverman is a member of the protected class. The ADEA protects those who are over forty. *Id.* At the time that Penobscot Shoe terminated Braverman, he was 64.

*b. Job performance.* Braverman must show that he was performing his job at a level that met the Company's legitimate expectations. The Court must view the issue of job qualifications in an objectively reasonable way. *Cumpiano v. Banco Santander Puerto Rico*, 902 F.2d 148, 154 (1st Cir.1990). "[I]n a discharge case[,] where an employee has been doing the job satisfactorily for a substantial period of time[, Braverman's] burden is not great." *Id.* (employee established that her performance met employer's legitimate expectations based, in part, on her positive work record and the employer's failure to warn her of dissatisfaction with her job performance).

Braverman's job performance met the Company's legitimate expectations. Plaintiff asserts that Defendants did not raise any dissatisfaction with his job performance until termination. Further, Defendants provided Braverman with benefits and raises that may reflect adequate job performance.

*c. Termination.* Defendants do not dispute that Braverman has satisfied the third requirement of his *prima facie* case. Defendants fired Plaintiff.

*d. Replacement.* Defendants hired someone to replace Braverman. *See id.*, at 155. Braverman, however, must show that Defendants replaced him with someone with roughly equivalent job qualifications. *LeBlanc*, 6 F.3d at 842. Braverman has shown that the Company replaced him with a man approximately 15 years his junior, and provided some information regarding the replacement's job qualifications. Braverman, therefore, has satisfied, albeit minimally, the *prima facie* requirement relating to his replacement's equivalent qualifications.

#### 2. Defendants' rebuttal

■ Because Braverman has established a *prima facie* case of age discrimination for summary judgment purposes, he has created "a presumption that the employer engaged in impermissible age discrimination." *Id.* To rebut this presumption, the employer must "articulate a legitimate nondiscriminatory

reason for the employee's termination." *Id.* (quoting *Lawrence v. Northrop Corp.*, 980 F.2d 66, 69 (1st Cir.1992)); *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

■ Defendants have stated a legitimate, nondiscriminatory reason for Braverman's termination. Defendants argue that during Braverman's leave for radiation treatment, Hansen discovered that Braverman had failed to keep him adequately informed of business-related matters. Hansen felt that Braverman misled him about significant problems with customers. Defendants argue that this discovery lead to Hansen's loss of trust in Braverman, and hence Braverman's termination.

### 3. Pretext

■ Because Defendants have articulated a legitimate, nondiscriminatory reason for Braverman's termination, Braverman must establish that the proffered explanation is pretext for unlawful age discrimination. *Le-Blanc*, 6 F.3d at 843. The First Circuit requires both evidence that reasonably supports a finding of discriminatory animus, and minimally sufficient evidence of pretext. *Id.*; *Goldman v. First Nat'l Bank*, 985 F.2d 1113, 1118, *as amended*, 61 Fair.Emp.Prac.Cas. (BNA) 439 (1st Cir.1993).

■ Braverman must do more than merely cast doubt on the Defendants' articulated reason to establish discriminatory intent. *Villanueva v. Wellesley College*, 930 F.2d 124, 131 (1st Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991) (citing *Menard*, 848 F.2d at 287). Viewing the facts in the light most favorable to Braverman, the Court is satisfied that he has established discriminatory intent for summary judgment purposes. Braverman alleges that Hansen repeatedly asked and pressured him about retirement because he was approaching 65. This evidence includes: Hansen asking Braverman in early 1992 about Braverman's retirement plans; Hansen suggesting retirement when Braverman disclosed his plans for radiation treatment; and the Company providing Braverman an unsolicited and unwelcome retirement infor-

mation package in the spring of 1992. Further, Braverman contends that Penobscot Shoe had a pattern of discrimination. *Olivera v. Nestle Puerto Rico, Inc.*, 922 F.2d 43, 49 (1st Cir.1990) (pattern of discrimination may establish discriminatory motive).

The Court must look at the totality of the circumstances before making a reasonable inference that the Defendants' proffered justification was a pretext for age discrimination. *Goldman*, 985 F.2d at 1119; *Connell v. Bank of Boston*, 924 F.2d 1169, 1175 (1st Cir.), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991). Braverman has generated a question of material fact of pretext by alleging that Defendants' counsel instructed Hansen on the reasons to provide for terminating Braverman.

Because Braverman has established a *prima facie* case, and offered evidence that puts in issue Defendants' explanation as pretext and a mask of discriminatory intent, the Court denies Defendants' summary judgment motion on count I.

### 4. Prejudgment interest

Defendants argue that Braverman is barred from pursuing his claim for prejudgment interest on his ADEA claim and request partial summary judgment. The Court, however, finds that summary judgment is inappropriate on the issue of prejudgment interest.

■ The Court agrees with Defendants' assertion that a plaintiff may not recover both liquidated damages on an ADEA claim and prejudgment interest on a backpay award. *Biggins v. Hazen Paper Co.*, 953 F.2d 1405, 1425 (1st Cir.1992); *Powers v. Grinnell Corp.*, 915 F.2d 34, 41–42 (1st Cir. 1990). In other words, "an award of liquidated damages in an ADEA action bars prejudgment interest." *Kolb v. Goldring, Inc.*, 694 F.2d 869, 875 (1st Cir.1982). The Court did not locate authority that bars Braverman from *demanding* both prejudgment interest and liquidated damages, but he is *not* entitled to a duplicative recovery.

*B. Hansen*

Hansen argues that the Court should grant him summary judgment on Count I because he is not a proper defendant on Braverman's ADEA claim. Hansen argues that Braverman has failed to fulfill the procedural prerequisites to sue him under the ADEA. The Court disagrees and finds to the contrary.

■ Hansen also argues that he is not an "employer" under the ADEA. Hansen's argument has strong intuitive appeal, but it is unsupported by the plain language of the statute, and is contrary to the weight of the law as determined by the majority of courts. As a matter of law, Hansen is a proper ADEA defendant.

The ADEA prohibits discrimination by an "employer." 29 U.S.C. § 623(a). The ADEA defines "employer":

> a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.... The term also means (1) *any agent of such a person.*

29 U.S.C. § 630(b) (emphasis added).

The First Circuit has not decided whether a supervisory employee and officer of an employer may be individually liable under the ADEA. Indeed, the First Circuit has not decided whether a supervisory employee falls within the comparable definition of "employer" under Title VII. *See Lamirande v. Resolution Trust Corp.*, 834 F.Supp. 526, 528 (D.N.H.1993).

Hansen maintains that he is not an "agent" under the ADEA. Hansen's position runs contrary to the plain meaning of the statute, and the common law definition of agent, which includes employees. *See id.* at 529.

Hansen's position also runs contrary to the general statutory scheme. The ADEA incorporates the remedies and procedures of the Fair Labor Standards Act ("FLSA"). *See Lorillard, Div. of Loew's Theatres, Inc. v. Pons*, 434 U.S. 575, 580–85, 98 S.Ct. 866, 869–72, 55 L.Ed.2d 40 (1978); *House v. Cannon Mills Co.*, 713 F.Supp. 159, 160–161

(M.D.N.C.1988). A supervisory employee can be personally liable as an employer under the FLSA. *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 589 (9th Cir.1993) (Fletcher, dissent); *Cannon Mills*, 713 F.Supp. at 160–62.

## III. Disability Discrimination

Braverman's Complaint contains three counts that allege violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213 ("ADA"). Count II alleges disability discrimination, count III alleges discrimination on the basis of association with one with a disability, and count IV alleges that Defendants terminated Braverman because he encouraged one with a disability in the exercise of that person's rights. Defendants have moved for summary judgment on all three counts. The Court denies Defendants' summary judgment motion on count II, but grants Defendants summary judgment on counts III and IV.

*A. Hansen*

■ Hansen argues that the Court should grant summary judgment in his favor on Braverman's ADA counts because these claims are barred by procedural limitations. Hansen also argues that he is not a proper defendant under the ADA.

Title I of the ADA prohibits discrimination by a "covered entity." 42 U.S.C. § 12112(a). An "employer" is a covered entity. 42 U.S.C. § 12111(2). The definition of "employer" includes:

> a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and *any agent* of such person.

42 U.S.C. § 12111(5)(A) (emphasis added). The plain language of the statute covers Hansen, because he acted as an agent for the Company. *See* section II(B), above. Further, courts that have decided the issue of personal liability under the ADA have upheld the plain meaning of the statute. *See, for example, Doe v. Shapiro*, 852 F.Supp. 1246, 1249 (E.D.Pa.1994).

The Court denies Hansen's summary judgment motion. The Court is persuaded that the ADA claims are not barred by any procedural limitations, and that Hansen is a proper defendant under the ADA.

### B. The merits

Title I of the ADA seeks to eliminate employment discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1). It prohibits covered entities from discriminating against "a qualified individual with a disability because of the disability ... in regard to ... discharge of employees." 42 U.S.C. § 12112(a).

The ADA defines disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

### 1. Count II

■ *a. Cancer as a disability.* Count II of Braverman's Complaint alleges that Defendants terminated him because he was disabled. Defendants claim that Braverman is not disabled under the ADA, because he does not suffer from, have a record of, and is not regarded as having an impairment that "substantially limits one or more of [his] major life activities." 42 U.S.C. § 12102(2).

Braverman argues that his major life activities were substantially limited at the time of his termination. He had just missed a significant amount of work due to radiation treatment, and the treatment had caused various intestinal, rectal, anal and urinary difficulties. Although Braverman had an excellent response to the treatment, Braverman's cancer was not in remission when he returned to work at the Company. A question of material fact obviously remains about whether this constitutes a substantial limit on Braverman's major life activities.

A question of material fact also remains over whether Braverman had a record of, or was regarded as being substantially limited at the time of his termination. Braverman argues that Hansen regarded him as disabled. Braverman also maintains that his leave for radiation treatment established a record of disability. *See School Bd. of Nassau County v. Arline,* 480 U.S. 273, 281, 107 S.Ct. 1123, 1127–28, 94 L.Ed.2d 307 (1987) (Under the Rehabilitation Act, hospitalization sufficient to establish substantial limitation of major life activity). Summary judgment is therefore inappropriate on the issue of Braverman's alleged disability because of the factual issues that remain for resolution. *See Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808, 814–15 (N.D.Tex.1994).

■ *b. The framework.* Defendants are not entitled to summary judgment on the merits of Braverman's claim that he was discriminated against because of his disability. Because Braverman has not presented direct evidence of disability discrimination, the Court again applies the *McDonnell Douglas* framework. *See Schartle v. Motorola, Inc.,* No. 93 C 5508, 1994 WL 188469 at *2, 1994 U.S.Dist.LEXIS 6241, at *4–5 (N.D.Ill. May 11, 1994) (court used *McDonnell Douglas* framework in ADA case); *see McDonnell Douglas,* 411 U.S. at 802–06, 93 S.Ct. at 1824–26.

Braverman has established a *prima facie* case of disability discrimination sufficient to withstand summary judgment. He has raised a question of material fact about having a disability, and is, therefore, within the protected class for summary judgment purposes. As explained above, Plaintiff has raised the issues as to whether or not Defendants' legitimate expectations were met by Braverman's job performance; Defendants terminated Braverman; and, Defendants replaced Braverman. *See* sections II(A)(1)(b–d), above. Defendants have stated a legitimate, nondiscriminatory reason for terminating Braverman. *See* section II(A)(2), above. Finally, Braverman has raised a question of material fact regarding whether Defendants' articulated reason is pretext. *See* section II(A)(3), above. The Court also finds that Braverman has narrowly raised a question of material fact regarding whether Defendants had discriminatory intent based on the timing of Braverman's termination.

■ *c. Punitive damages.* Defendants are entitled to partial summary judgment on Count II with respect to punitive damages. A plaintiff may recover punitive damages under the ADA if she demonstrates that the employer engaged in discriminatory behavior with "malice" or "reckless indifference" to her federally protected rights. 42 U.S.C. § 12117 (reference to Title VII provisions); 42 U.S.C. § 1981a(b)(1).[2]

Braverman has not generated sufficient evidence to create a question of material fact over whether Defendants intentionally discriminated against him with either malice or reckless indifference to his rights. *See Canada v. Boyd Group, Inc.,* 809 F.Supp. 771, 781 (D.Nev.1992) (section 1981a claim for punitive damages dismissed because plaintiff failed to show that defendants "acted maliciously, with an intent to harm, or recklessly, with serious disregard for the consequences of their actions").

### 2. Count III

An employer may not:

exclud[e] or otherwise den[y] equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.

42 U.S.C. § 12112(b)(4).

■ Count III of Braverman's Complaint alleges that Defendants terminated Braverman because of his known association with an individual with a disability. Braverman alleges that Defendants fired him, in part, because he kept secret the knowledge that a Company account executive, Morris Moskowitz, had prostate cancer. Braverman asserts that this action violated § 12112(b)(4). The Court disagrees.

Braverman has generated a question of material fact about whether Moskowitz's prostate cancer constituted a "known disability" and whether the supervisory position that Braverman occupied with respect to Moskowitz created a "relationship or association."

Braverman, however, has failed to provide the necessary causal link between the two. Braverman states that he was fired because he failed to betray Moskowitz's secret to Hansen. This does not constitute terminating him because of an association, it constitutes terminating him, in part, for omissions in reporting to his supervisor.

Further, the Court finds that § 12112(b)(4) was not intended to cover this situation. *See* 29 C.F.R. Ch. XIV (July 1, 1993) Pt. 1630, App. at 413. The EEOC regulations suggest that § 12112(b)(4) was intended to apply, for example, to an employer's failure to hire an applicant because the applicant has a disabled spouse, or an employer's discharge of an employee who volunteered at an AIDS clinic due to the employer's fear of contracting AIDS. *Id.* Braverman's conclusory allegations do not reach this level. The Court, therefore, grants Defendants' Motion for Summary Judgment on Count III.

### 3. Count IV

■ Count IV of Braverman's Complaint alleges that Defendants discharged Braverman because he helped Moskowitz exercise his rights under the ADA. The Court finds that Braverman has not raised sufficient facts to support this claim, and, therefore, grants summary judgment.

It is unlawful:

to ... interfere with any individual ... on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of[ ] any right granted or protected by [the ADA].

42 U.S.C. § 12203(b). To withstand summary judgment, Braverman must support his allegation of retaliatory action with a *prima facie* showing that Braverman aided Moskowitz in an ADA-protected activity, that Defendants subjected Braverman to an adverse employment action, and that a causal connection existed between the protected conduct and the adverse action. *See Mesnick v. General Elec. Co.,* 950 F.2d 816, 827

---

**2.** 42 U.S.C. § 1981a(b)(1) states:

A complaining party may recover punitive damages ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

(1st Cir.1991), *cert. denied,* ——— U.S. ———, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992) (explaining elements of retaliation charge under the ADEA).

Braverman has failed to establish the necessary causal connection between his promise not to reveal Moskowitz's cancer and his termination. Viewed in the light most favorable to Braverman, the evidence shows only that Braverman honored a pledge not to reveal Moskowitz's cancer, and that Defendants fired him, in part, for failing to disclose important information. This insufficient causal nexus is diminished further by the fact that Moskowitz informed Hansen of his cancer soon after informing Braverman.

### C. Jury trial

 Defendants have filed a Motion to Define Scope of Jury Trial under the ADA.[3] "The Seventh Amendment preserves the right to trial by jury in 'Suits at common law.'" *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 550, 110 S.Ct. 1331, 1335–36, 108 L.Ed.2d 504 (1990). " 'Suits at common law' refers to 'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.' " *Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564, 110 S.Ct. 1339, 1344, 108 L.Ed.2d 519 (1990) (quoting *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 447, 7 L.Ed. 732 (1830)).

If an employer violates Title I of the ADA, the employees are entitled to those remedies available to employees under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117.[4]

Before 1991, Title VII authorized courts to enjoin unlawful employment practices and to:

order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay, ... or any other equitable relief.

42 U.S.C. § 2000e–5(g). These remedies are equitable, and have not historically required trial by jury. *Ramos v. Roche Prods., Inc.,* 936 F.2d 43, 49 (1st Cir.), *cert. denied sub nom., Rossy v. Roche Prods. Inc.,* ——— U.S. ———, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991).

The Civil Rights Act of 1991, however, broadened the relief available for an employer's intentional discrimination. Employees who prevail on their claims may now recover compensatory and punitive damages. 42 U.S.C. § 1981a(a)(2).[5] Further, if a complaining party seeks compensatory and punitive damages, she may demand and receive a trial by jury. 42 U.S.C. § 1981a(c)(1).

Braverman seeks compensatory and punitive damages for violation of the ADA. Braverman also seeks traditional Title VII damages such as backpay, benefits, reinstatement or frontpay, and declaratory relief.

Defendants argue that the amended jury trial provisions of § 1981a restrict the jury determination to (1) whether compensatory and statutory punitive damages are justified and (2) if justified, the amount. Defendants contend that the Court must make the threshold liability determination, and decide the traditional Title VII remedies including backpay. The Court disagrees, in part. Braverman is entitled to a jury trial on liability and damages. The Court will determine the issues of backpay, benefits and reinstatement. The Court will decide these issues

---

**3.** The Motion for Sanctions that is included in Braverman's reply to Defendants' Motion to Define Scope of Jury Trial is denied.

**4.** 42 U.S.C. § 12117 states:

The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides ... to any person alleging discrimination on the basis of disability in violation of any provision of this chapter ... concerning employment.

**5.** 42 U.S.C. § 1981a(a)(2) provides, in relevant part:

In an action brought by a complaining party under the powers, remedies, and procedures set forth in ... 42 U.S.C. § 2000e–5 ... (as provided in ... 42 U.S.C. § 12117(a)) ... against a respondent who engaged in unlawful intentional discrimination ... or who violated ... 42 U.S.C. § 12112 ... the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized [under Title VII], from the respondent.

after the jury makes its determination. *See Lytle,* 494 U.S. at 550, 110 S.Ct. at 1335–36.

### 1. Liability

 The jury will decide Defendants' liability for disability discrimination. Braverman's Complaint includes both legal and equitable claims. Braverman has a right to a jury trial not only on his legal claims, but also on the issues that the legal and equitable claims have in common. *Lytle,* 494 U.S. at 550, 110 S.Ct. at 1335–36; *Curtis v. Loether,* 415 U.S. 189, 196 n. 11, 94 S.Ct. 1005, 1009 n. 11, 39 L.Ed.2d 260 (1974). Whether Defendants intentionally discriminated against Braverman underlies Plaintiff's claim for both legal and equitable relief. The jury, therefore, must determine whether Defendants intentionally discriminated against Braverman. *Lytle,* 494 U.S. at 550, 110 S.Ct. at 1335–36.

### 2. Backpay

 Courts have traditionally treated backpay as an equitable remedy. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415–18, 95 S.Ct. 2362, 2370–72, 45 L.Ed.2d 280 (1975) (backpay awarded against employer in Title VII case equitable). Whether a plaintiff who seeks backpay under either the ADA or Title VII is entitled to a jury trial is an open question. *Landgraf v. USI Film Prods.,* —— U.S. ——, —— n. 4, 114 S.Ct. 1483, 1490 n. 4, 128 L.Ed.2d 229 (1994).

As explained above, the 1991 amendments allow an ADA plaintiff to demand a jury trial if she seeks compensatory damages. 42 U.S.C. § 1981a(c)(1). Backpay is a " 'make-whole' remedy that resembles compensatory damages in some respects." *Landgraf,* at ——, 114 S.Ct. at 1491. Congress, however, expressly excluded backpay from the defini-

tion of "compensatory" damages. *See* 42 U.S.C. § 1981a(b)(2).

The Court will determine whether Braverman is entitled to backpay. This will give effect to the narrow language of the statute, and the traditional distinction between legal and equitable claims.[6] A court in this District recently decided that backpay was an equitable remedy and, therefore, not appropriate for a jury determination. *See Lussier v. Runyon,* Civ. No. 92–397–P–H, 1993 WL 434078, at *2, 1993 U.S.Dist.LEXIS 14906, at *3–4 (D.Me. Oct. 14, 1993) (action brought under the Rehabilitation Act, which has the same remedies as Title VII and § 1981a).

### 3. Reinstatement or frontpay

 Reinstatement is an equitable remedy and not a jury question. Because Plaintiff presents frontpay as an alternative to reinstatement, it is closely intertwined with reinstatement and the Court will also consider it an equitable remedy. *See Lussier,* 1993 WL 434078, at *2, at *4 (frontpay is an equitable remedy, not appropriate for jury consideration). The Court will, therefore, resolve the issue of reinstatement, or in the alternative, frontpay.

### IV. Maine Human Rights Act

As a matter of law, this Court must interpret the Maine Human Rights Act, 5 M.R.S.A. §§ 4551–4660–A ("MHRA"), consistent with federal discrimination law. *Winston v. Maine Technical College Sys.,* 631 A.2d 70, 74 (Me.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1643, 128 L.Ed.2d 364 (1994); *Wells v. Franklin Broadcasting Corp.,* 403 A.2d 771, 773–74 n. 4 (Me.1979); *Maine Human Rights Comm'n v. Auburn,* 408 A.2d 1253, 1261 (Me.1979). Because Defendants

---

**6.** The 1991 amendments require this Court to separate backpay and compensatory damages. 42 U.S.C. § 1981a(b)(2). The Court notes, however, that this conclusion raises practical concerns. As the First Circuit explained in connection with a 42 U.S.C. § 1983 claim of political firing before the 1991 amendments:

there is . . . a sound practical reason for having the jury factor in back pay when determining compensatory damages. Submission of the issue of back pay to the jury as a factor to be considered in its award of compensatory dam-

ages eliminates the inevitable overlap between compensatory damages and back pay. In most cases of an alleged unconstitutional firing, there will be evidence of the employee's pay. To expect a jury to ignore this is unrealistic, especially where it may constitute the major item of compensatory damages.

*Santiago–Negron v. Castro–Davila,* 865 F.2d 431, 441 (1st Cir.1989) (when a jury determines liability and compensatory damages in § 1983 action, the jury will determine backpay as an element of compensatory damage).

are not entitled to summary judgment on Counts I and II of the Complaint, they are not entitled to summary judgment on this Count.

■ Defendants argue that the Court should grant them summary judgment on Braverman's request for civil penal damages and attorneys' fees in Count V. The Court agrees.

The MHRA states:

No attorneys' fees ... and no civil penal damages ... may be awarded to a plaintiff in a civil action under this Act unless the plaintiff alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the commission and the commission ... (C) Issued a right-to-sue letter.

5 M.R.S.A. § 4622(1). The Maine Human Rights Commission issued Braverman a right-to-sue letter. The Maine Superior Court, however, later declared the letter "invalid and ineffective." *Penobscot Shoe Co. v. Maine Human Rights Comm'n*, No. CV–93–449 (Penobscot County Super. Ct. March 21, 1994). The court's declaration invalidates Braverman's demand for attorneys' fees and civil penal damages.

### V. Intentional Infliction of Emotional Distress

■ Intentional infliction of emotional distress requires proof of:

(1) intentional or reckless conduct which inflicts severe emotional suffering or would be substantially certain to result in such suffering; (2) conduct so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable; (3) the defendant's conduct must cause the plaintiff emotional suffering; and (4) the plaintiff's emotional suffering must be severe so that no reasonable person could be expected to endure it.

*Latremore v. Latremore*, 584 A.2d 626, 631 (Me.1990); *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 154 (Me.1979).

Defendants intentionally terminated Braverman's employment. Braverman, however, has not produced any evidence of atrocious and utterly intolerable conduct, or evidence that generates a question of material fact about whether Braverman has endured "severe" emotional suffering.

### VI. Negligent Infliction of Emotional Distress

■ In order to prove a claim for negligent infliction of emotional distress, Plaintiff must show that Defendants were negligent; that Plaintiff suffered emotional distress that was a reasonably foreseeable result of Defendants' negligent conduct; and that Plaintiff suffered severe emotional distress as a result of Defendants' negligence. *Bolton v. Caine*, 584 A.2d 615, 617–18 (Me. 1990); *Gammon v. Osteopathic Hospital of Maine, Inc.*, 534 A.2d 1282 (Me.1987).

The Court finds that Plaintiff has not provided sufficient evidence to raise a question of material fact that Defendants were negligent. He has not shown that Defendants acted or failed to act in a manner which a reasonably prudent person or corporation would act in the management of their affairs. *See Cameron v. Pepin*, 610 A.2d 279, 282–83 (Me.1992). At the very least, Braverman has not established a factual predicate for a finding of "severe" emotional distress. *Bolton*, 584 A.2d at 618.

### VII. Punitive Damages

Count VIII of Braverman's Complaint demands punitive damages in connection with his claims for intentional and negligent infliction of emotional distress. Because the Court has granted Defendants summary judgment on Plaintiff's emotional distress claims, the Court must grant summary judgment on Plaintiff's punitive damages claim. *See Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me.1985).

### VIII. Conclusion

The Court denies Hansen and the Company summary judgment on counts I and V. The Court grants summary judgment for the Company and Hansen on the issue of punitive damages under the ADA, but otherwise denies summary judgment on count II. The Court grants summary judgment for the Company and Hansen on counts III, IV, VI, VII and VIII. The Court grants the Motion to Define Scope of Jury Trial, and finds that

Plaintiff is entitled to a jury trial on count II on the liability and compensatory damages issues. The Court denies Plaintiff's Motion for Sanctions and Motion to Strike Defendants' Summary Judgment Motions.

*SO ORDERED.*