Gerald C. **WOYTHAL**, Plaintiff,

v.

**TEX–TENN CORPORATION**, Defendant.

No. 2:95–CV–87.

United States District Court,
E.D. Tennessee.

Dec. 6, 1995.

D. Bruce Shine, Donald F. Mason, Jr., Law Offices of Shine & Mason, Kingsport, TN, for plaintiff.

Richard M. Currie, Jr., Cherie S. King, Wilson, Worley, Gamble & Ward, P.C., Kingsport, TN, for defendant.

## MEMORANDUM

COLLIER, District Judge.

Before the Court is the Motion for Summary Judgment filed by Defendant Tex–Tenn Corporation ("Tex–Tenn") (Court File No. 9). Plaintiff Gerald C. Woythal ("Woythal") filed a Response (Court File No. 13). Woythal brought this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

Woythal claims Tex–Tenn fired him "because of Woythal's age, 67, and not due to an inability on Woythal's part to satisfactorily accomplish his job responsibilities. There exists no rational business justification for the termination of Woythal" (Court File No. 1, ¶ 17). Tex–Tenn first contends Woythal cannot prove a *prima facie* case of age discrimination because he cannot show Tex–Tenn discharged him and then argues Woythal did not suffer an adverse employment decision because of his age (Court File No. 10, p. 1). For the following reasons, the Court will **GRANT** the motion for summary judgment.

## I. RELEVANT FACTS

Tex–Tenn, formed in 1981, manufactures deep pile sliver, circular knit fabric from polyester, acrylic, mod-acrylic, wool fibers, and other synthetic yarns. John Seifert ("Seifert") is founder and President of Tex–Tenn. Woythal was an original investor in the company and an employee until December 1993. Woythal, an engineer, at first had secondary responsibility for engineering duties at the company, but then held the position of Plant Manager from 1983 until 1988. From 1988 until the end of December 1993, Woythal served as Tex–Tenn's Chief Engineer and oversaw all engineering responsibilities. At the time Woythal left Tex–Tenn's employment, he was sixty-seven (67) years old.

Toward the close of 1992 and early in 1993, Tex–Tenn began a period of growth and expansion (*See* Court File No. 9, Aff. of C. John Seifert, ¶ 4; *see also id.,* Depo. of Gerald C. Woythal, p. 103). Seifert questioned whether the engineering department could address the increased demand (*See id.,* Seifert Aff. at

¶ 4) and discussed with and got agreement from Woythal that an additional engineer would help (*See id.* at ¶ 5; *see also* Woythal Depo. pp. 62, 84, 103).[1]

During most of Woythal's employment, Seifert directly supervised him. In April 1993, James Carico ("Carico"), Tex–Tenn's newly hired Operations Manager, assumed responsibility for overseeing the engineering department, comprised of Woythal and five other employees. Carico had experience in management and training but very little background in textiles. In order to learn the business, Carico states he relied on Tex–Tenn's experienced employees (Court File No. 9, Aff. of James Carico, ¶ 2). Woythal's Response notes he very soon found Carico unavailable and communication with him difficult (Court File No. 13, pp. 2–3). Carico characterizes Woythal as "disinterested in his own duties, and in the various projects requiring his attention throughout the company" and his "input and participation" as "not forthcoming" (Court File No. 9, Carico Aff. ¶ 3). Seifert observed Woythal "did not seem interested in long or short range planning, and generally appeared to have lost interest in the company" (*Id.,* Seifert Aff., ¶ 6).

Coupled with Tex–Tenn's period of growth and Seifert's and Carico's observations of Woythal's apparent attitude toward work, rumors circulating of Woythal's retirement gave Seifert cause for concern (*Id.,* Seifert Aff. ¶ 3). It is clear such rumors abounded (*See* Court File No. 9, Depos. of: C. John Seifert, p. 126; James H. Carico, p. 82; Wayne A. Swihart, p. 52; R. Scott Hammitt, p. 16; Ed Coffey, p. 16; Darryl Jay Webb, p. 16; Alan Hale, p. 9; and William James McDavid, p. 13). It is also clear that at least some of them originated from Woythal himself (*See generally id.*). Rumors, though,

have various shapes and sizes and, when jumbled together, lack definition (*See generally id.*).

Seifert several times asked Woythal to tell him of his employment plans and the role he wanted to have at Tex–Tenn (Court File No. 9, Seifert Aff. ¶ 3; *see also id.,* Carico Aff. ¶ 4 and Swihart Depo. p. 52). Woythal argues he consistently told Seifert he wanted to continue working full-time at Tex–Tenn (Court File No. 13, p. 4). Seifert contends he never got a clear response from Woythal and he then sought Carico's help to talk with him (Court File No. 9, Seifert Aff. ¶¶ 3, 6). In October 1993, Carico met with Woythal. Carico remembered the meeting dealt with Woythal's general performance and described it as "motivational" (Court File No. 13, Carico Depo. pp. 20–21). Woythal recalled the meeting pertained to specific aspects of plant operations (Court File No. 13, p. 3). Woythal also points out neither he nor Carico considered the meeting as a prelude to his ultimate departure from Tex–Tenn (Court File No. 13, p. 3; Court File No. 13, Carico Depo. p. 21 and Woythal Depo. p. 90). Carico later told Seifert about the meeting and submitted a summary of it to Woythal's personnel file (Court File No. 10, p. 4).

Tex–Tenn claims Woythal after this meeting continued to be evasive as to his plans and lackadaisical as to his work (*Id.*). On 20 December 1993, with Seifert's knowledge, Carico again met with Woythal. Woythal argues Carico, on behalf of Seifert, clearly fired him and told him "he should vacate his office by 30 December 1993" (*See* Court File No. 13, pp. 4–5). Woythal cites two statements Seifert made during his deposition testimony as support for his version of the meeting. When discussing with Carico the purpose of the December 1993 meeting, Seifert states he told Carico (1) to "tell Gerry to

---

1. Woythal contends the circumstances of Tex–Tenn's hiring of William Soltes ("Soltes"), thirty-nine (39) years old at the time, unequivocally demonstrates Tex–Tenn's discrimination against him (*See* Court File No. 13, p. 6). Tex–Tenn does not contest this aspect of a *prima facie* case of age discrimination (*See* Court File No. 10, p. 10). The Court finds this factor goes more toward establishing a *prima facie* case, rather than conclusively evidencing discrimination. Assuming, *arguendo,* a *prima facie* case is established and

then rebutted by the defendant, any presumption of discrimination "drops from the case." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (citation omitted); *see also Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1085 (6th Cir.1994) ("We do not find any evidence, other than that which established his four prima facie elements, that age played any part in Manzer's termination.").

get off the pot, what does he want to do?"; and (2) "push this to the wall to the extent that we can get Gerry to commit to what the hell he wants to do" (Court File No. 13, p. 5, *citing* Seifert Depo. pp. 127 and 106, respectively). Seifert made an additional relevant comment pertaining to the 20 December 1993 meeting not cited by either party. The deposition questions and answers follow:

Q: ... Even though you had some disagreements and you hadn't gotten along, you're telling me—

A: We always got along.

Q: Well, I mean as human beings sometimes don't get along. I don't mean that you were at each other's throats. But you'd had some disagreements and you'd had some differing views and so forth. Really, there was no reason that you would have for getting rid of him, was there?

A: The only thing—the only thing that would happen is that it was not to get rid of Gerry but Carico was told for heaven's sakes get an answer for me. It was a test of Carico as much as it was for Woythal.

Q: So the answer to my question would be no, that you would have no reason to get rid of him?

A: That's correct.

(*Id.*, Seifert Depo. pp. 143–44). Tex–Tenn argues it did not fire Woythal. The company describes the meeting as leaving the decision to Woythal whether to participate actively in the company or to leave voluntarily (*See* Court File No. 10, pp. 4–5).

Woythal believed the 20 December 1993 meeting to be the culmination of a series of meetings and discussions about his retirement, all designed to pressure him to retire (*See* Court File No. 13, pp. 3–5). Significantly, Woythal states Seifert never complained of his "work product, work efficiency, work ethic, or attitude" and, moreover, Seifert admitted to having no basis for terminating his employment (*Id.* at p. 3). Woythal emphasizes Seifert and Carico admitted they often questioned him about retirement and other employees "perceived" the questions about his intentions to specifically address his retirement (*Id.* at p. 4). As noted above, Woy-

thal claims he consistently told Seifert he wanted to continue working, while Tex–Tenn contends Woythal equivocated at best. To this end, Woythal contends Seifert never tried to clarify any "misunderstanding" Woythal had regarding the 20 December 1993 meeting by either offering his job back or suggesting a different job at Tex–Tenn (Court File No. 13, p. 5).

## II. STANDARD OF REVIEW

Under *Fed.R.Civ.P.* 56(c), the Court will render summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists, *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994); *Kentucky Div., Horsemen's Benev. & Prot. Assoc., Inc. v. Turfway Park Racing Assoc., Inc.*, 20 F.3d 1406, 1411 (6th Cir.1994), and the Court must view the facts and all inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Oakland Gin Co., Inc. v. Marlow*, 44 F.3d 426, 429 (6th Cir. 1995); *City Management Corp. v. U.S. Chemical Co., Inc.*, 43 F.3d 244, 250 (6th Cir.1994). Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Lansing Dairy*, 39 F.3d at 1347; *Horsemen's Benev.*, 20 F.3d at 1411. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but

does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir. 1987). The standard for summary judgment mirrors the standard for directed verdict. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy,* 39 F.3d at 1347; *Horsemen's Benev.,* 20 F.3d at 1411.

## III. ANALYSIS

Tex–Tenn's motion for summary judgment first argues Woythal cannot demonstrate a *prima facie* case of age discrimination because he cannot show he suffered an adverse employment decision. The Court understands Tex–Tenn to contend Woythal voluntarily resigned. Second, Tex–Tenn argues Woythal cannot show that any sort of alleged adverse employment decision, if so found, was actually motivated by age-based discrimination. The Court understands Tex–Tenn to contend Woythal lost interest in his job, speculated that Tex–Tenn was trying to force him to retire, and chose not to change his attitude toward work. This, too, resulted in Woythal's voluntary resignation. The Court finds both of these contentions implicate the legal effect to be given rumors, references, and questions made to and about an employee regarding that employee's retirement.

■■■ First, though, the Court does find a genuine issue of material fact as to the exact nature of the 20 December 1993 meeting between Carico and Woythal. Carico states he did not fire Woythal, but that Woythal

chose to voluntarily resign; Woythal states Carico affirmatively told him to vacate his office by 30 December 1993. There is thus a genuine issue of material fact as to the existence of the third prong of a *prima facie* case.[2] In order to prove a *prima facie* case of age discrimination, Woythal must prove the following:

(1) he belongs to a protected class;

(2) he was qualified to do the job;

(3) despite his qualifications, he suffered an adverse employment decision; and

(4) his position was filled by someone outside that protected class.

*Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1329 (6th Cir.1994); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1160 (6th Cir.1990).

■■■ Upon proof of a *prima facie* case, a presumption of discrimination arises, to which the defendant may respond by providing a legitimate, nondiscriminatory reason to rebut the *prima facie* case. *St. Mary's,* 509 U.S. at ——, 113 S.Ct. at 2747, *citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant meets this burden, the plaintiff then has an opportunity to show the proffered reasons are a pretext for discrimination. *St. Mary's,* 509 U.S. at ——, 113 S.Ct. at 2747. It is crucial, however, that under the *McDonnell Douglas* burden shifting framework, the *"ultimate burden of persuading the trier of fact* that the defendant intentionally discriminated against the plaintiff remains *at all times* with the plaintiff." *Id.* (emphasis added). Such is the plaintiff's burden even when the trier of fact rejects the defendant's proffered nondiscriminatory reasons. *Id.,* at ——, 113 S.Ct. at 2749 (noting rejection of the defendant's reasons does not *"compel* [ ] judgment for the plaintiff[,]" which would be counter to the "repeated admonition that the ... plaintiff at all times bears the 'ultimate burden of persuasion'") (citations omitted). "Even though

---

**2.** Tex–Tenn does not dispute the existence of the first, second, and fourth prongs of a *prima facie*

case (*See* Court File No. 10, p. 10).

. . . rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of discrimination, *there must be a finding of discrimination.*" *Id.,* at —— n. 4, 113 S.Ct. at 2749 n. 4.

 Second, following *St. Mary's,* even if the Court assumed the existence of a *prima facie* case, Woythal would then still bear the ultimate burden of showing Tex–Tenn intentionally discriminated against him because of his age. *Id.,* at ——, 113 S.Ct. at 2754 ("It is not enough, . . ., to *dis*believe the employer['s proffered nondiscriminatory reasons]; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.") Thus, even though Tex–Tenn contends Woythal voluntarily resigned, which gives rise to a genuine issue of fact as to the existence of a *prima facie* case, Tex–Tenn is not somehow precluded from *articulating* a legitimate, nondiscriminatory reason for Woythal's departure from the company simply because Tex–Tenn claims no adverse employment decision occurred.

> The reasons the defendant sets forth are set forth 'through the introduction of admissible evidence.' In other words, the defendant's 'articulated reasons' *themselves* are to be found 'lurking in the record.'

*Id.,* at ——, 113 S.Ct. at 2755 (citations omitted); *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1083 (6th Cir.1994) ("The jury may not reject an employer's explanation . . . unless there is a sufficient basis *in the evidence* for doing so. To allow [this] . . . would subtly, but inarguably, shift the burden of persuasion from the plaintiff to the defendant, which we must not permit.") (citations omitted). Woythal must show Tex–Tenn intentionally discriminated against him because of his age. Tex–Tenn's proffered response is, in fact, straightforward: Woythal voluntarily resigned from the company in the absence of intentional age-based discrimination. That Woythal must address this reason, which happens to coincide with his ultimate burden, does not alter the principle clarified in *St. Mary's.*

As noted above, Tex–Tenn's contention that Woythal cannot demonstrate intentional age discrimination implicates the legal effect to be given rumors, references, and questions made to and about an employee regarding that employee's retirement. Woythal's Complaint addresses this issue: "Prior to December 20, 1993, agents of Tex–Tenn requested Woythal to resign and/or curtail his activities with Defendant Tex–Tenn. Woythal refused all such requests, indicating his desire to continue work with Defendant corporation until age 70" (Court File No. 1, ¶ 15). As noted above, the rumors of Woythal's retirement abounded. Woythal bases his belief of age discrimination upon the existence of these rumors and Seifert's and Carico's responses to them, i.e., the questioning of Woythal as to his employment plans (*See* Court File No. 13, pp. 10–12). Specifically, Woythal contends "comments regarding retirement made by a decisionmaker provide direct and circumstantial evidence of discrimination" (*Id.* at p. 11) and "the fact that John Seifert, Jim Carico, and other Tex–Tenn employees questioned Woythal about retirement to the point *that he believed that he was being pressured to retire* provides evidence of discriminatory animus against Woythal on the basis of his age" (*Id.*) (emphasis added).

 Tex–Tenn argues "a company has a legitimate interest in learning its employees' plans for the future, and it would be absurd to deter such inquiries by treating them as evidence of unlawful conduct." *Colosi v. Electri–Flex Co.,* 965 F.2d 500, 502 (7th Cir. 1992). Additionally, Tex–Tenn argues Woythal's "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination." *Chappell v. GTE Products Corp.,* 803 F.2d 261, 268 (6th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1987). These are persuasive and reasonable propositions the Court will accept, unless Woythal shows Seifert's and Carico's questions demonstrate age discrimination. When considering statements allegedly showing age-based discrimination, courts review

> whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks;

and whether they were proximate in time to the act of termination. *Cooley*, 25 F.3d at 1330.

▮ Woythal must "produce evidence that age was a factor in [Tex–Tenn's] decision to discharge [him] and that but for this factor, [he] would not have been discharged." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir.1993), *citing Chappell*, 803 F.2d at 265–66. While the evidence shows the rumors and discussion of Woythal's retirement were not isolated events, the evidence does not demonstrate Woythal's "age" played any significant role at all. Woythal has not once brought to the Court's attention even the slightest reference to his age made by Tex–Tenn.

First, courts reviewing age-related comment cases routinely analyze direct and explicit comments. *See Wells v. New Cherokee Corp.*, 58 F.3d 233, 237 (6th Cir.1995) ("too old to do the job" and "younger person could do more"); *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1093 (5th Cir.1994) ("old man," "old and inflexible," and "incapable"); *Corbin v. Southland Intern. Trucks*, 25 F.3d 1545, 1549 (11th Cir.1994) ("At your age you cannot produce like you once could, and we are going to have to make some kind of adjustment."); *Cooley*, 25 F.3d at 1331–32 (wanting a "younger work force," feeling "uncomfortable around older people," fearing "sexual activities would be adversely affected by the aging process," and mentioning "token senior citizens"); *Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1164–65 (7th Cir.1994) ("not keeping employees on until they reached sixty-five").

Second, courts expressly addressing contentions similar to Woythal's have found the employers' questions and references to retirement have amounted to pressure to retire. *See Braverman v. Penobscot Shoe Co.*, 859 F.Supp. 596, 601 (D.Me.1994) (noting employer "pressured" employee to retire); *Rottersman v. CBS, Inc.*, 726 F.Supp. 484, 488 (S.D.N.Y.1989) (noting employer "had on repeated occasions asked him why he did not retire"). *Braverman* is instructive. In *Braverman*, the court found the following evidence supported an allegation that the employer repeatedly asked and pressured

the employee about retirement: asking about retirement when the employee approached sixty-five, suggesting retirement when the employee underwent radiation treatment, and providing an unsolicited and unwelcome retirement information packet to the employee. *See Braverman*, 859 F.Supp. at 601.

Woythal did not show Tex–Tenn made direct, explicit references to his age. Any comments made in the context of discussing the rumors about Woythal's retirement are too ambiguous or too abstract to support a claim of age discrimination. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994), *citing Phelps*, 986 F.2d at 1025. Woythal also did not show Tex–Tenn pressured him to retire. The evidence demonstrates Woythal himself generated many, if not all, of the rumors pertaining to his retirement. Both *Braverman* and *Rottersman* indicate it must be the employer who both initiates the questioning about the employee's retirement and then pointedly suggests retirement for there to be pressure. The evidence shows Seifert and Carico responded to rumors and then sought clarification from Woythal. It is a prudent business decision, especially amidst a period of growth and expansion, to make sure the company is fully prepared to address the challenges of its future.

Woythal did nothing but demonstrate to the Court his subjective interpretation of events and circumstances. Accordingly, the Court finds Woythal did not meet his burden under the summary judgment standard. The Court will **GRANT** the motion for summary judgment (Court File No. 9).

An Order will enter.

### *ORDER*

In accordance with the accompanying Memorandum, the Court hereby **GRANTS** the Motion for Summary Judgment filed by Defendant Tex–Tenn Corporation (Court File No. 9). There being no other issues before the Court, this case is **DISMISSED**.

**SO ORDERED.**