**Bret J. KEEHL, Plaintiff,**

v.

**Patrick DeBOTTIS, Robert Krichke and the Township of Hamburg, jointly and severally, Defendants.**

**No. 90–CV–40123–FL.**

United States District Court, E.D. Michigan, S.D.

Nov. 1, 1991.

---

**2.** Affidavit of Robert H. Fredericks II at     para. 14.

Jeffrey D. Meek, Livonia, Mich., for plaintiff.

Audrey J. Forbush, Flint, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Before the Court is a motion for summary judgment brought by the Township of Hamburg and the Township's Chief of Police, Robert Krichke. Defendant DeBottis filed a motion for partial summary judgment as well. A hearing was held on both motions. Defendant DeBottis' motion was granted at the hearing. During argument of the Township's motion, the plaintiff argued that deposition testimony of his expert created a material issue of fact. The testimony had not been made a part of the record. The hearing was adjourned. The plaintiff was ordered to file the deposition transcript, and the parties were permitted an opportunity to file supplemental briefs. The submissions have been made. Upon consideration of the various pleadings, the Township's and Chief Krichke's motion is GRANTED.

### I.

The case arises out of a motorcycle chase run amok. The plaintiff, Bret Keehl, fled on motorcycle from Officer DeBottis. After the cycle crashed, Keehl attempted to escape on foot. DeBottis ordered him to stop, and threatened to use his gun. It is unclear whether shots were fired by either the plaintiff or by Officer DeBottis.

Eventually, the plaintiff was arrested by DeBottis with the assistance of defendant Krichke. Officer DeBottis testified at the plaintiff's preliminary hearing that the plaintiff fired a gun at DeBottis. Consequently, the plaintiff was bound over for trial on charges of assault to commit murder and felony firearm. Keehl was released and the charges were dropped after he agreed to take, and passed, a polygraph examination. He eventually pled guilty to fleeing and eluding a police officer.

Plaintiff now claims that his constitutional rights were violated by Officer DeBottis' conduct, including the giving allegedly perjured testimony about the plaintiff firing on DeBottis. He asserts that Chief Krichke and the Township are liable as well.

### II.

■ The Township states that it cannot be held liable under respondeat superior notions, but instead the plaintiff must show the existence of a policy or custom if he is to hold the Township liable. *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). The plaintiff has not and cannot show an official policy of encouraging its law enforcement officials to perjure themselves in pretrial proceedings. *Alioto v. City of Shively,* 835 F.2d

1173 (6th Cir.1987). The plaintiff has not and cannot allege facts to show that the failure to train officer DeBottis rose to the level of deliberate indifference as required by the United States Supreme Court. *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412, 426 (1989). Finally, there can be no duty to supervise if there has not been "a history of widespread abuse" to trigger it. *Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir.1983).

There's no way the plaintiff can show that the Township had a custom or policy of encouraging its officers to perjure themselves. There is no issue that the failure to train amounted to deliberate indifference. The Township and Chief Krichke must be dismissed unless the plaintiff can show that perjury by Township police officers was so widespread that a duty to supervise was triggered, or, as the plaintiff argues, Chief Krichke's conduct created a municipal policy violative of the plaintiff's constitutional rights.

### A.

Turning first to the allegations that the Chief and the Township failed adequately to supervise, the Sixth Circuit does not allow a supervisor to be held liable for the actions of his charges absent a showing that the supervisor

> either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officer.

*Hays v. Jefferson County,* 668 F.2d 869 (6th Cir.1982). Krichke's affidavit states that neither the Township nor the police department had a policy directing or allowing "police officers to deprive any citizen of *rights secured to that citizen by the [C]onstitution* or the laws of the United States." Defendants' Brief in Support of Motion for Summary Judgment, at 14. The absence of a policy encouraging constitutional violations does not mean that there is no policy which has the effect of denying constitutional rights. This argument, and the statement in the affidavit seem inapposite at best. Still, the burden is on the plaintiff to create a factual issue that meets the legal standard set out above.

The plaintiff responds that there is a material issue of fact: it is uncertain whether defendant DeBottis fired gunshots at the plaintiff or not. Obviously this is not a material fact for purposes of determining whether there is supervisory liability.

In a final attempt to establish supervisory liability, the plaintiff argues that Chief Krichke directly participated in the constitutional violation by participating in the wrongful arrest of the plaintiff despite the absence of any proof that the plaintiff had committed any crime. Plaintiff argues that Chief Krichke

> had strong reasons to disbelieve Defendant DeBOTTIS because of a total lack of evidence that KEEHL had a weapon or that he discharged a firearm. No weapon was found at the scene, despite the use of State Police dogs and a search of the area. Also, ... DeBOTTIS walked right into the Post Office where KEEHL was arrested without taking any precautions, despite the fact that KEEHL had, according to DeBOTTIS, attempted to shoot and kill him. It was this policy of "believe and support the officers, no matter what the evidence was", that caused the violation of the plaintiff's civil rights.

Plaintiff's Brief in Opposition to Motion for Summary Judgment, at 8. I am not persuaded that, without an unjustified reliance on hindsight, Chief Krichke's participation in the arrest is so egregious as to constitute participation in the constitutional violation itself. The plaintiff's arguments to establish supervisory liability fail.

### B.

In an effort to impose liability on the Township, the plaintiff argues that a municipal policy was established when Chief Krichke decided to ignore or violate written policies, initiated a new policy of supporting fellow officers without question and

created an atmosphere which encouraged the commission of perjury.

█ The plaintiff relies upon *Marchese v. Lucas*, 758 F.2d 181 (6th Cir.1985) where it was held that the failure to investigate an incident of obvious constitutional violations can lead to municipal liability. In *Marchese*, the Sheriff failed to investigate the beating of a prisoner in the county jail.

The Sheriff's subsequent failure to order and direct an investigation which disclosed exactly who were the perpetrators of these brutal violations of the U.S. Constitution and to administer censure and punishment served to confirm the existence of an unstated "policy" of toleration of illegal brutality toward any county prisoner who had threatened the life of a sheriff's deputy.

*Id.* at 184. Thus, a single incident of a violation of constitutional rights may lead to municipal liability if it goes uninvestigated.

Plaintiff believes that Chief Krichke failed to investigate Officer DeBottis' story about the plaintiff prior to participating in the arrest of the plaintiff. He argues that this failure ratified Officer DeBottis' conduct, creating municipal policy and justifying municipal liability.

Plaintiff focuses on Krichke's failure to investigate the underlying story which lead to the alleged constitutional violation—that is, Keehl's conduct while fleeing from the scene of the chase. The appropriate focus, however, is on the failure to investigate the constitutional violation itself, the perjured testimony at the pretrial hearing, and any other misconduct which allegedly violated the constitution. *Marchese* is inapplicable to the kind of failure focussed on by plaintiff.

At oral argument, the plaintiff argued that the deposition testimony of his expert establishes an issue of fact about the existence of a municipal policy upon which municipal liability can be based. Since the deposition testimony had not been made part of the record at the time of the hearing, the Court adjourned the hearing and granted the plaintiff an opportunity to submit the expert's deposition and make that testimony a part of the record.[1]

Supplemental briefs were submitted with the deposition transcript. The plaintiff's basic argument is that, although the Township had a stated policy of vigorously investigating shooting incidents, Chief Krichke had repeatedly failed to comply with the policy. Such a repeated departure from stated policy could create a new policy. *St. Louis v. Praprotnik*, 485 U.S. 112, 131, 108 S.Ct. 915, 928, 99 L.Ed.2d 107, 122–23 (1988) (O'Connor, J. plurality opinion) ("Refusals to carry out stated policies could obviously help to show that a municipality's actual policies were different from the ones that had been announced."); *id.* at 145, n. 7, 108 S.Ct. at 935, n. 7, 99 L.Ed.2d at 132, n. 7 (Brennan, J. concurring). The argument must fail, however, due to the absence of facts submitted to support it.

The plaintiff seeks to use the expert's testimony to show repeated failures to investigate shooting incidents in a vigorous manner, and that Chief Krichke was deliberately indifferent to the constitutional violations which resulted. The plaintiff would also use this testimony to argue that Chief Krichke had created an atmosphere that was conducive to the commission of constitutional violations.

1. The plaintiff also argued that there was a material issue of fact as to which set of rules and regulations were in effect at the time this incident took place. The defendants cleared this issue up in their supplemental brief. New policies were initiated in June of 1989, and these policies would not have applied to Chief Krichke's and Officer DeBottis' conduct at any time relevant to this suit. In affidavits and in depositions, Chief Krichke referred to the 1989 policies because "he had been using that policy for over a year at the time of his affidavit and

his deposition, [and] he did not realize that it was not in effect at the time of the incident involving the plaintiff." Defendant's Supplemental Brief, at 2. Chief Krichke submitted an affidavit in support of this argument, and this factual explanation has not been met by the plaintiff. Although the Township's policies are discussed below, and may be material to determining municipal liability, Chief Krichke's affidavit removes any genuine issue of fact in this regard.

The expert did not review other cases involving investigations of shooting incidents, and says as much in his deposition. Payne Deposition, at 92–93. There is no testimony or other evidence to show repeated departures from the stated policies of the Township. Facts showing the frequency and repetitive nature of the deviations from the policies are necessary to a finding that Chief Krichke's conduct created a new Township policy of not vigorously investigating shooting incidents. Facts also are needed if the plaintiff is to show that Chief Krichke remained deliberately indifferent to the constitutional violations which occurred as a result of the less than vigorous investigations which allegedly occurred. The expert witness' second hand observations and conclusory statements about the state of the Township's policies as administered by Chief Krichke cannot be used to meet these necessary factual elements. The plaintiff's reliance on the deposition testimony similarly leaves him without foundation for arguing the existence of an "atmosphere" or a policy to support police officers no matter what.

The plaintiff has failed to establish the existence of a Township policy that encourages its officials to perjure themselves. No facts have been presented to support a claim that the Township inadequately trained its police officers. The plaintiff has also failed to create a factual issue to support his argument that Chief Krichke's approach to investigating shooting incidents has created a new policy of non-vigorous investigations resulting either in the violation of the plaintiff's constitutional rights, or in a series of constitutional deprivations the deliberate indifference to which would trigger supervisory liability. The Township must be dismissed from this suit because there is no custom or policy upon which to base municipal liability under 42 U.S.C. § 1983.

■ The plaintiff has also failed to establish Chief Krichke's direct participation, or the chief's deliberate indifference in order to impose § 1983 liability on him.

Therefore, defendants Township's and Krichke's motion for summary judgment is GRANTED and both defendants are hereby DISMISSED from this case.

SO ORDERED.