**Douglas JONES, Co–Administrator of the Estate of Douglas M. Jones, Jr., et al., Plaintiffs,**

**v.**

**Russel D. BEATTY, et al., Defendants.**

**No. 4:96CV2668.**

United States District Court,
N.D. Ohio,
Eastern Division.

April 30, 1998.

Kent B. Schneider, Hermann, Cahn & Schneider, Cleveland, OH, for Plaintiffs.

David Cooper Comstock, Jr., Thomas J. Wilson, Comstock, Springer & Wilson, Youngstown, OH, for Defendants.

## MEMORANDUM OPINION

GWIN, District Judge.

On March 21, 1997 the defendants filed a motion for summary judgment in this § 1983 action [Doc. 16]. The defendants claim that they did not violate the plaintiffs' decedent's civil rights and, alternatively, that the affirmative defense of qualified immunity shields Defendants Officer Ronald E. Oldland and Village of Poland Chief of Police Russel D. Beatty from any liability. For the reasons set forth below, the Court grants the defendants' motion for summary judgment.

### I

On the evening of June 6, 1996, Defendant Officer Oldland was on patrol for the Defendant Village of Poland. While sitting in his patrol car, Officer Oldland observed a white Pontiac Trans Am traveling northbound on State Route 170 in the village. The decedent, Douglas M. Jones, Jr., was playing his car stereo loudly. According to Oldland, Jones turned the stereo down when he saw the police car. At that point Oldland followed Jones and initiated a traffic stop. Both vehicles pulled into the parking lot of Western Reserve Joint Fire District Station 1.

Officer Oldland left his patrol car and approached the Trans Am. He requested Jones' driver's license, registration, and insurance card. Jones gave the officer those items. Oldland reports that at this time he noticed a strong odor of alcohol on or about Jones. Under questioning, Jones admitted drinking alcohol prior to the stop. Officer Oldland then returned to his car to obtain information from the Mahoning County radio dispatcher on the driver.

After obtaining the necessary information, Oldland returned to the Trans Am. Oldland asked Jones to exit the vehicle to submit to a field sobriety test. Jones complied. Prior to initiating the test, Oldland asked Jones if he possessed any weapons. Jones replied that he did not. Officer Oldland patted Jones down to confirm that Jones did not have any weapons.

Officer Oldland then asked Jones to move towards the front of the vehicle in order to take the sobriety test. The officer had his back turned and heard something fall to the ground. Officer Oldland turned around to see Jones picking the object up from the ground. According to Oldland, he was able to identify the object as a gun magazine. Under questioning, Jones admitted that he had a gun in the car.

After Jones acknowledged the existence of a gun in the car, Jones took a step towards the Trans Am. Officer Oldland ordered Jones to place his hands on the car. Jones then turned around and placed his hands on the vehicle. Oldland attempted to place handcuffs on Jones, but Jones broke free and headed towards the open car door on the driver's side. Knowing that there was a gun in the automobile, and being in fear for his life, Officer Oldland drew his weapon and

pursued Jones in an attempt to prevent both Jones' access to the car and his control of the weapon.

Despite Oldland's efforts, Jones obtained access to the interior of the vehicle, and began to reach around beneath the seat in the center console area. Oldland, in an effort to prevent Jones from gaining access to the gun, attempted to control Jones' arms by laying on top of him in the vehicle. Jones pushed back, and somehow put the car into gear, while still struggling with Oldland.

Jones then stepped on the accelerator, causing the vehicle to accelerate rapidly forward. Oldland continued to yell for Jones to stop, but the car moved forward rapidly with Oldland being dragged. Officer Oldland continued his efforts to limit Jones' access to the weapon, in addition to screaming for Jones to stop. Jones refused. As the Trans Am continued its rapid acceleration, Oldland risked being thrown from the vehicle and run over.

According to Officer Oldland he feared for his life. Oldland fired his weapon, which was located at that time somewhere in the vicinity of Jones' shoulder or neck. Jones continued to struggle with Oldland, and Oldland fired his weapon two more times as the Trans Am continued moving forward. Jones ceased struggling. Both men fell from the vehicle as the vehicle continued to move forward. After flipping out of the vehicle, Oldland came to rest on his stomach, with his gun still in his hand. Jones came to rest face down on the pavement, having been fatally shot. An ambulance took Officer Oldland to the hospital.

Subsequently, the Ohio Bureau of Criminal Identification and Investigation (BCII) and the state Highway Patrol undertook an investigation. The investigation confirmed there was a gun in the Trans Am, which a friend had loaned to Jones.

Plaintiffs Douglas Jones and Charmaine Jones, co-administrators of the estate of the decedent, filed suit pursuant to ·42 U.S.C. § 1983 and state law seeking $ 5 million in damages. Plaintiffs allege that Oldland violated decedent's civil rights when he fired three shots at Douglas Jones, Jr. resulting in the latter's death. The complaint is not clear

whether plaintiffs also wish to pursue separate state claims including wrongful death, a survival action, assault, battery, and intentional infliction of emotional distress. Plaintiffs sued Chief of Police Russell D. Beatty and the Village of Poland as well as Officer Oldland. Oldland and Beatty are being sued in both their official and individual capacities. Both Officer Oldland and Beatty have asserted qualified immunity as an affirmative defense.

## II

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.,* 112 F.3d 243, 245 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections,* 141 F.3d 252, 255–56 (6th Cir.1998).

Specifically, to survive a motion for summary judgment on an excessive force claim under § 1983, the plaintiff must designate specific facts demonstrating that the police officer acted unreasonably. *Smith v. Freland,* 954 F.2d 343, 345 (6th Cir. *cert. denied,* 504 U.S. 915, 112 S.Ct. 1954, 118 L.Ed.2d 557 (1992)).

## III

Generally, government officials performing discretionary functions have qualified immunity "shielding them from civil damages liability, as long as their actions could reasonably have been thought to be consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The general rule of qualified immunity is intended to provide government officials with the ability to reasonably anticipate when their conduct may give rise to liability for damages. *Id.* 483 U.S. at 646, 107 S.Ct. 3034. Where a public official's "duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citation and footnote omitted).

Whether or not qualified immunity exists in a given case is a legal question for the court, unless there is a genuine issue of material fact regarding whether the defendant actually committed acts which would violate a clearly established right. *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997). It is the plaintiffs' ultimate burden of proof to establish that the defendants are not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991).

In a § 1983 action, the first step in a qualified immunity analysis is to determine whether, based on the applicable law, a constitutional violation has occurred. *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). In this case, the alleged constitutional violation is that Officer Oldland violated Douglas M. Jones, Jr.'s Fourth Amendment right as a free citizen to be free from the use of excessive force during the seizure. Even when an officer has probable cause to seize an individual, the police officer may only use a reasonable amount of force when effecting the seizure. *Monday*, 118 F.3d at 1104 (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Claims of excessive force under the Fourth Amendment are analyzed under an objective reasonableness standard. *Smith*, 954 F.2d at 345–47.

The test under the Fourth Amendment for the reasonableness of the force used cannot be defined precisely or applied mechanically. *Monday*, 118 F.3d at 1104 (citing *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). To properly apply the reasonableness test the court must pay careful attention to the facts and circumstances of each particular case. *Id.* Courts consider whether the suspect posed an immediate threat to the safety of the officer or others and whether the suspect was actively resisting arrest or attempting to escape arrest by fleeing. *Id.* Appropriately, courts assess reasonableness from the perspective of the reasonable officer on the scene, not with the benefit of hindsight. *Id.* (citing *Graham*, 490 U.S. at 397, 109 S.Ct. 1865). If, upon applying these tests, the court determines that no constitutional violation has occurred, then the court need go no further.

However, if the court determines there was a constitutional violation, it must proceed to the next step of the qualified immunity analysis. *Dickerson*, 101 F.3d at 1158. The court next must determine whether the violation involved "clearly established constitutional rights of which a reasonable person would have known." *Id.* at 1158 (citation omitted). In order to be "clearly established," the right allegedly violated must be defined in a particularized and relevant sense rather than on a general level. *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* It is not necessary that the conduct previously was held unlawful, but in light of the pre-existing law the unlawfulness of that conduct must be apparent. *Id.*

If it is determined that the right is clearly established, then the court must determine whether the plaintiff has alleged sufficient facts, supported by sufficient evidence, to indicate what the officer did was "objectively unreasonable in light of the clearly estab-

lished constitutional rights." *Dickerson*, 101 F.3d at 1158 (citation omitted).

## IV

As previously noted, the first step in qualified immunity analysis is to determine whether a constitutional violation has occurred. Plaintiffs allege a violation of the decedent's Fourth Amendment right to be free from the use of excessive force. In order to determine whether the force utilized was reasonable, the Court must pay careful attention to the facts and circumstances of each particular case. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir.1992).[1]

Here, the plaintiffs cite two incidents in which they contend Officer Oldland conducted himself improperly: the initial traffic stop and the subsequent use of deadly force against the decedent.

Defendants assert that Officer Oldland initiated the traffic stop because Douglas Jones, Jr. drove by with the car stereo playing at an unusually high volume and then turned the music down upon seeing the officer. Plaintiffs allege that Officer Oldland did not have probable cause to pull the decedent over. Plaintiffs claim that the driver allegedly traveling behind the decedent did not hear the music. Construing that evidence in a light most favorable to the plaintiffs does not change matters.[2]

■ The Court finds the use of deadly force was reasonable. The decedent admittedly had been consuming alcohol according to Officer Oldland's testimony. The BCII report confirmed the presence of alcohol in the decedent's blood. The decedent had a gun located somewhere in the interior of the vehicle. The officer also was aware that the decedent possessed ammunition for the weapon. The decedent attempted to flee, first by running for his vehicle when Oldland attempted to place handcuffs on him, and then by putting the vehicle in gear and pressing the accelerator. All the while the decedent was reaching around inside the vehicle, presumably to obtain control of his weapon. The decedent accelerated the vehicle and dragged Officer Oldland at a high rate of speed. Despite the repeated urging of Officer Oldland, the decedent did not stop the car. It was only after using deadly force that Officer Oldland was able to stop the decedent.

■ The Court looks at the reasonableness of the officer's actions from the perspective of a reasonable officer on the scene, not with the benefit of hindsight. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. In determining reasonableness, a court allows for the fact that police officers often are forced to make split-second judgments about the amount of force that is necessary in a particular situation, in "tense, uncertain and rapidly evolving circumstances." *Id.* 490 U.S. at 396–97, 109 S.Ct. 1865. Under *Graham*, personal notions of proper police procedure should not be substituted for the instantaneous decision of a police officer at the scene. *Smith*, 954 F.2d at 347. "We must never allow the theoretical, sanitized world of our imagination to

---

1. Of some relevance here, the Sixth Circuit in *Russo* goes on to say:

   that the reasonableness inquiry in an excessive force action is an objective one, which should disregard the underlying intent or motivation of the defendant. To determine whether exigent circumstances exist, a court should look to the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." 953 F.2d at 1044 (citations omitted).

2. The usual rule appears to be that a police officer does need probable cause in order to initiate a traffic stop. *Whren v. U.S.*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (Fourth Amendment "balancing" of governmental and individual interests not in doubt when probable cause present). Whether Oldland's initial stop of decedent's vehicle presents a constitutional violation need not be resolved to grant defendants qualified immunity. The complaint, and the argument over qualified immunity, is concerned with the use of deadly force when the decedent tried to flee the scene. If defendants were guilty of a constitutional violation in stopping Jones' car that evening, such a violation does not excuse the conduct of either Jones or Oldland. The Court believes a constitutional infirmity here simply would be immaterial. In any event, the officer probably had probable cause to detain the decedent before the shooting when Jones admitted that he had a weapon and that he had been drinking.

replace the dangerous and complex world policemen face every day. What constitutes 'reasonable action' may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." *Id.*

It was reasonable for Officer Oldland to fear for his life. The decedent could have gained control of his weapon at any time and fired on Officer Oldland. Jones could have continued to drag the officer at increasing rates of speed eventually resulting in the officer's death or serious injury. Any reasonable officer in these circumstances would have feared for his or her life. For such officers, the use of deadly force would have been justified.

At trial, the plaintiffs would bear the burden of proving that the defendant used excessive force, or that the force used was unreasonable under the circumstances. *Miller. v. Taylor,* 877 F.2d 469, 472 (6th Cir. 1989). Since a police officer's use of deadly force is constitutionally permissible under appropriate circumstances,[3] proof that the officer used deadly force alone does not satisfy the first element of a § 1983 claim. *Id.* Plaintiffs also must show that Officer Oldland's conduct was unjustified under the circumstances. *Id.*

Plaintiffs here have failed to do so. They present the testimony of an independent witness to the events who requested anonymity. According to this anonymous witness, Jones' car moved at a "normal" rate of speed, Officer Oldland was dragged only a short distance, and two shots were fired after the car stopped. The witness' statement contradicts the physical evidence in this case as the witness testifies to only two shots being fired when the BCII reports confirm that three shots were fired at the decedent.

It is not the role of the court to determine the credibility of evidence. The court must construe this evidence in the light most favorable to the plaintiff. Even if the Court accepts this evidence, it does not create a genuine issue of material fact. Plaintiffs place particular emphasis on the anonymous witness' assertion that the car had stopped before the shots were fired. Even if that is true, it is not material to whether or not Officer Oldland's use of deadly force was reasonable. At that point, the decedent already had displayed conduct which would place Officer Oldland in reasonable apprehension for his life. The decedent still had a gun within his reach, as well as the gas pedal of the car, and already had shown no regard for Officer Oldland's life. The standard is that of a reasonable officer at the scene. The Court finds that Officer Oldland conducted himself in an objectively reasonable manner given the circumstances. Therefore, the Court concludes that Officer Oldland did not violate the decedent's constitutional right to be seized without excessive force.

## V

Even if Officer Oldland had violated the decedent's constitutional rights, he would be entitled to the defense of qualified immunity. The next step in a qualified immunity analysis is to determine whether the alleged violation involved a clearly established constitutional right of which a reasonable person would have known. *Dickerson,* 101 F.3d at 1158. If it is determined that a right is clearly established, then the court must determine whether what the officer did was objectively unreasonable in light of the clearly established constitutional right. *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir.1994).

The right to be free from unreasonable seizures, and to be free from the use of excessive force, is clearly established under the Fourth Amendment for purposes of a claim of qualified immunity.[4] Therefore, the next inquiry is whether Officer Oldland acted reasonably in light of that clearly established right.

---

3. *See, Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *Miller,* 877 F.2d at 472 n. 3.

4. The right to be free from unreasonable seizures is articulated in *California v. Hodari D.,* 499 U.S.

621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). The right to be free from the use of excessive force was established in *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Officer Oldland found himself in a dangerous and escalating situation in which the suspect not only had a gun within his reach, but proceeded to accelerate the vehicle 1 and drag Officer Oldland along the street at a high rate of speed. The scenario unfolded quickly and Officer Oldland had to make a virtually instantaneous decision as to whether the use of deadly force was permitted under the circumstances. The officer was legitimately in fear for his life and that permits the use of deadly force.[5]

Plaintiffs have failed to allege sufficient facts raising a genuine and material factual dispute whether Officer Oldland's conduct was objectively unreasonable under the circumstances. Therefore, Officer Oldland is entitled to the defense of qualified immunity in the event a constitutional violation was found.

### VI

■■■■■ As to the potential liability of Defendant Police Chief Beatty, a supervisor should not be held liable under § 1983 if the subordinate is not liable. *Aponte Matos v. Toledo Davila,* 135 F.3d 182, 192 (1st Cir. 1998). Additionally, the Sixth Circuit does not allow a supervisor to be held liable under § 1983 for the actions of his or her subordinates without a showing that the supervisor either encouraged the specific conduct at issue or in some way directly participated in it. *Keehl v. DeBottis,* 776 F.Supp. 1216, 1218 (E.D.Mich.1991) (*citing Hays v. Jefferson County, Ky.,* 668 F.2d 869 (6th Cir.), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982)). A plaintiff must show that the supervisor authorized, approved of, or knowingly acquiesced in the specific conduct of the officer. *Walton v. City of Southfield,* 995 F.2d 1331, 1340 (6th Cir.1993).

Here, plaintiffs have presented no evidence to indicate that Defendant Beatty either encouraged or directly participated in the conduct in question. Even if plaintiffs could establish that Beatty encouraged or partici-

pated in the conduct at issue, Beatty would still be entitled to the defense of qualified immunity based on this Court's determination that the conduct in question was reasonable under the circumstances.

### VII

■■■■ The language and the legislative history of § 1983 compel the conclusion that Congress did not intend a local government to be held liable solely because it employs a tortfeasor. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability under § 1983 cannot be based on the traditional respondeat superior theory. *Id.* Absent a finding that the alleged constitutional violation was a result of a policy or custom of the municipality, the local government as an entity cannot be held liable. *Id.* 436 U.S. at 694, 98 S.Ct. 2018.

Based on the Court's determination that Officer Oldland, in his official capacity, did not violate the decedent's constitutional rights, the Village of Poland is not liable for damages. Additionally, even if a constitutional violation had occurred, plaintiffs have offered no evidence that the alleged violation was the result of a policy or custom of the defendant village.

### VIII

■■■■ Defendant Officer Oldland did not violate the civil rights of Douglas M. Jones, Jr., when he fired three shots fatally wounding Jones. Officer Oldland acted reasonably in using deadly force in this regrettable incident. Defendants Chief of Police Beatty and the Village of Poland also are not liable under § 1983 as no constitutional violation occurred. Plaintiffs have failed to raise a material factual issue precluding summary judgment on their federal claims. The Court will dismiss any pendent state claims so that plaintiffs can pursue these claims in the state's courts.[6]

---

**5.** In *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the Court determined that the use of deadly force is permissible when the officer reasonably believes that the

suspect poses a threat of serious physical harm to the officer or to others.

**6.** *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## IX

For the reasons outlined above, the Court grants the defendants' motion for summary judgment.

IT IS SO ORDERED.

The doctrine of "pendent" jurisdiction permits federal courts to entertain state claims which would otherwise lack subject matter jurisdiction so long as the state claim is "joined" with a related federal claim, the two arising out of the same event or connected series of events. Because pendent jurisdiction is principally associated with federal question jurisdiction, where the existence of a federal claim supports jurisdiction over a "pendent" state claim, disposition of the federal claim allows the district court to exercise its discretion to allow any unresolved state claims to be heard in the state courts. 28 U.S.C.A. § 1367.