**Gerald C. WOYTHAL, Plaintiff–Appellant,**

v.

**TEX–TENN CORPORATION, Defendant–Appellee.**

**No. 96–5020.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 21, 1996.

Decided April 25, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied June 9, 1997.

Donald F. Mason, Jr. (argued and briefed), D. Bruce Shine, Shine & Mason, Kingsport, TN, for Plaintiff–Appellant.

Richard M. Currie, Jr. (briefed), Cherie S. Adams (argued and briefed), Wilson, Worley, Gamble & Ward, Kingsport, TN, for Defendant–Appellee.

Before KENNEDY, BOGGS, and WOOD,* Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Plaintiff–Appellant Gerald Woythal appeals the district court's grant of summary judgment in favor of the Defendant–Appellee, Tex–Tenn Corporation. Woythal, a sixty-eight year old male, filed a complaint under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, alleging that Tex–Tenn fired him because of his age. Tex–Tenn filed a motion for summary judgment, and because the court found that Woythal could not prove that Tex–Tenn intentionally discriminated against him because of his age, it granted summary judgment in Tex–Tenn's favor. Woythal appeals, and we affirm.

Gerald Woythal was one of Tex–Tenn's founding investors in 1981, and worked there as an engineer from 1981 until December 1993. From December 1988 until December 1993, he was Tex–Tenn's Chief Engineer.

* The Honorable Harlington Wood, Jr., Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

For most of that time, Woythal answered only to Tex–Tenn's president, John Seifert. In early 1993, however, Seifert created the job of Operations Manager and hired James Carico to fill the position. One of the Operations Manager's duties was supervising the engineering department, including Woythal. Carico and Woythal never quite hit it off, and Woythal claims to have had difficulty communicating with Carico, finding him unavailable when he was needed. Carico characterizes Woythal as displaying a negative attitude and as being apathetic about the company's future.

Tex–Tenn was experiencing rapid growth at this time, and Seifert was concerned about the engineering department's ability to meet increased demands. He decided to hire an additional engineer as an assistant for Woythal, a decision that Woythal supported. However, Seifert found Woythal to be uninterested in helping to recruit a new engineer. Thus, without asking Woythal to review resumes or interview any of the applicants, Seifert and Carico hired Bill Soltes, then age 39, to fill the position.

At about this same time, rumors circulated among Tex–Tenn employees that Woythal was considering retirement. Several employees later testified that Woythal told them that he was planning to retire soon. Concerned about retaining sufficient engineering support for Tex–Tenn's future, Seifert inquired of Woythal several times what he wanted to do for Tex–Tenn and what his plans for retirement were. Each time, Woythal indicated that he wanted to continue working full-time until at least age 70. Seifert, however, found Woythal's answers evasive, and to him, Woythal seemed unwilling to participate in the process of planning for Tex–Tenn's growth and expansion. He asked Carico to try his hand at motivating Woythal to become more involved.

Carico met with Woythal in October 1993, but that is the extent to which the parties agree on the events of that meeting. Woythal asserts that the two simply spoke about various engineering matters. Carico, on the other hand, testified that he discussed Woythal's lack of determination to solve problems, his lack of interest in new projects, and

his negative attitude. Woythal denies this. In any event, Seifert was still unsatisfied with Woythal's responses to questions about his plans for the future, and he made more inquiries about Woythal's rumored retirement. He insisted that Carico get a definite commitment from Woythal on what his plans were.

Carico and Woythal met again on December 20, 1993, and again the parties disagree on what was said at the meeting. Woythal maintains that Carico terminated his employment; Carico testified that he did not terminate Woythal, but instead told him that Tex–Tenn needed his participation, and that if Woythal chose not to participate, he would not be needed. Carico informed Woythal that he wanted to know by the end of December whether Woythal intended to be an active participant in the company. Regardless of what was actually said, Woythal interpreted Carico's message to mean that he was fired, and he cleared out his office and was gone by December 30. Seifert and Carico insist that they did not fire Woythal, but that he chose to either resign or retire. In the days before Woythal left Tex–Tenn, Seifert learned that Woythal believed he had been fired. Seifert told Woythal he was sorry Woythal had decided to leave. He expressed a desire to work things out, and said Woythal could keep his keys and could come back any time he changed his mind.

Bill Soltes started work on January 1, 1994, and because Woythal was no longer working at Tex–Tenn, was given the position of Chief Engineer, Woythal's former position. Soon after, Woythal filed suit under the ADEA, charging that Tex–Tenn had fired him because of his age and had replaced him with a younger employee. The district court granted summary judgment in Tex–Tenn's favor, holding that although it assumed for purposes of summary judgment that Woythal had stated a prima facie case of age discrimination, he did not have enough evidence to convince a reasonable jury that Tex–Tenn had intentionally discriminated against him because of his age.

■ We review a district court's grant of summary judgment *de novo*, examining the record and drawing all inferences in the light

most favorable to the non-moving party. *City of Mount Clemens v. United States Envtl. Protection Agency,* 917 F.2d 908, 914 (6th Cir.1990). Our task is to determine whether summary judgment was appropriate in this case; thus, we will examine the record as a whole to determine whether a genuine issue of material fact exists or whether Tex–Tenn is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In order to prevail, Woythal must provide sufficient facts that, if believed, would allow a reasonable jury to conclude that Tex–Tenn fired him. He also must produce "direct, indirect, or circumstantial evidence that [his] age was a factor in the decision to terminate [him] and that 'but for' this factor [he] would not have been terminated." *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314–15 (6th Cir.1989), *citing Chappell v. GTE Products Corp.,* 803 F.2d 261, 265–66 (6th Cir.1986).

Under the *McDonnell Douglas* burden-shifting method for proving employment discrimination claims when no direct evidence of discrimination exists, Woythal's first step is to state a prima facie case of age discrimination. To do this, he must prove that:

1. He is a member of a protected class;
2. He is qualified to do his job;
3. Despite his qualifications, his employment situation was adversely affected; and
4. His position was filled by a younger individual.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, ——–——, 116 S.Ct. 1307, 1309–10, 134 L.Ed.2d 433 (1996) (assuming that *McDonnell Douglas* framework is applicable in ADEA cases). If Woythal can prove these four elements, the burden of production shifts to Tex–Tenn to rebut the prima facie case by stating a legitimate non-discriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Once this is done, Woythal, who retains the burden of

proof at all times, must produce sufficient evidence to allow a jury to reasonably reject Tex–Tenn's explanation. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2748–50, 125 L.Ed.2d 407; *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1083 (6th Cir.1994).

In its motion for summary judgment, Tex–Tenn claimed that Woythal had not stated sufficient facts to even establish a prima facie case. While it admitted that Woythal was a member of a protected class, qualified to do his job, and was replaced by a younger person, Tex–Tenn contested Woythal's claim that his employment situation had been adversely affected because it denies that Woythal was fired. Thus, a genuine issue of fact exists as to the existence of a prima facie case, and the district court, properly viewing the facts in the light most favorable to Woythal, let the case proceed on the assumption that he had been fired. *See Lenz v. Erdmann Corp.,* 773 F.2d 62, 64 (6th Cir.1985); *EEOC v. Our Lady of Resurrection Medical Center,* 77 F.3d 145, 149 (7th Cir.1996).

This did not defeat Tex–Tenn's summary judgment motion, however, for it still had the opportunity to articulate a legitimate, non-discriminatory reason for firing Woythal. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. It did this by explaining that Woythal resigned in the absence of intentional age-based discrimination: Tex–Tenn maintains that after being told to "shape up or ship out," Woythal chose the latter option and resigned. In addition, it contends, if it actually did fire Woythal, his age was not the motivating factor. Tex–Tenn cites Woythal's negative attitude and lack of interest in the company's future as non-discriminatory reasons for firing him, had it done so. As these were legitimate non-discriminatory reasons for Woythal's departure, Tex–Tenn met its burden of production. Woythal next had the opportunity to show that Tex–Tenn's reasons were a pretext for discrimination. To do this, he is required to produce sufficient evidence from which a jury could reasonably reject Tex–Tenn's explanation, because "[i]t is not enough ... to *dis*believe the employer['s proffered nondiscriminatory reasons]; the factfinder must *believe* the plaintiff's ex-

planation of intentional discrimination." *Hicks,* 509 U.S. at 519, 113 S.Ct. at 2754. In other words, in order to defeat the motion for summary judgment, Woythal must show that Tex–Tenn intentionally discriminated against him because of his age. *See Phelps v. Yale Sec., Inc.,* 986 F.2d 1020, 1023 (6th Cir.1993); *Chappell v. GTE Products Corp.,* 803 F.2d 261, 265–66 (6th Cir.1986).

To do this, Woythal relies on the questions that Seifert and others asked him about his plans for retirement. He insists that each time Seifert asked him what he wanted to do for the company and what his plans for the future were, he answered that he wanted to keep working for Tex–Tenn until he was about 70 years old. Woythal claims that Seifert, Carico and others continued to ask him about his retirement "to the point that he believed he was being pressured to retire...." However, as the district court noted, these questions about his plans for the future do not amount to evidence that Woythal's age was the reason for his departure from Tex–Tenn; in fact, he has not shown that anyone at Tex–Tenn made direct references to his age at all. The cases Woythal relies on to show that comments about an employee's age or impending retirement can indicate discriminatory motive all involve far more egregious statements than occurred here. *See McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir.1990) (older employee told he could be "cheaply replaced with a younger salesman"); *EEOC v. Manville Sales Corp.,* 27 F.3d 1089, 1094 (5th Cir.1994) ("old man," "old and inflexible" and "incapable"); *Corbin v. Southland Int'l Trucks,* 25 F.3d 1545, 1549 (11th Cir.1994) ("at your age you cannot produce like you once could, and we are going to have to make some kind of adjustment"); *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1108 (9th Cir.1991) ("old warhorse"); and *Braverman v. Penobscot Shoe Co.,* 859 F.Supp. 596, 601 (D.Me.1994) (employer provided plaintiff with unsolicited and unwelcome retirement information package and suggested that he retire). Compared to these statements, Seifert's "what are your plans for the future" is more of a friendly inquiry than a covert attempt to force retirement. It is evident that Seifert never felt he got a straight answer from Woythal, and was frustrated, as his directives to Carico reveal. It does not appear, however, that Seifert was trying to make Woythal retire.

◼ To show that the questions about his plans were related to his age, Woythal relies on *Braverman* and other cases which hold that a supervisor's pressure and constant questioning of an older employee about retirement is sufficient to raise an inference of discriminatory intent to defeat a motion for summary judgment. *See Sischo–Nownejad,* 934 F.2d at 1108; *Rottersman v. CBS Inc.,* 726 F.Supp. 484, 488, 492 (S.D.N.Y.1989). Both *Braverman* and *Rottersman* indicate that pressure to retire occurs when the employer initiates the questioning and then pointedly suggests retirement. In this case, however, no one at Tex–Tenn ever explicitly mentioned retirement or suggested to Woythal that he retire. Seifert merely asked Woythal what his plans were, and did not suggest that Woythal should have answered his questions by announcing his plans to retire. In addition, as the district court noted, the testimony of Tex–Tenn employees showed that Woythal himself generated many of the rumors regarding his retirement. As Tex–Tenn's president, Seifert had a legitimate concern in making sure that Tex–Tenn had continuing engineering support, and he was entitled to inquire of Woythal whether the rumors were true. Asking questions about an employee's plans for the future, without referring to the employee's age, especially when rumors are circulating that the employee is planning to retire, does not amount to pressure to retire. This is so even though Woythal may have interpreted it as pressure, because "[m]ere personal belief, conjecture and speculation are insufficient to support an inference of age discrimination." *Chappell,* 803 F.2d at 268; *see also Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 567 (5th Cir.1983). We agree with the district court, and hold that a reasonable jury could not consider the fact that Seifert asked Woythal about his future plans to be evidence of intentional age discrimination.

Woythal argues, however, that these questions coupled with the hiring of Bill Soltes the day after Woythal left Tex–Tenn provide

evidence that it was Tex–Tenn's clever plan to pressure him to retire, and when that didn't work, to then fire him and replace him with someone younger. Woythal initially agreed to the hiring of an assistant, however, and Seifert and Carico had made preparations to hire Soltes long before Woythal left Tex–Tenn. It is evident from the accounts of the interviews that Seifert and Carico did not intend to hire Soltes as a replacement for Woythal as the Chief Engineer; rather, he was to be an assistant. He only achieved the position as Chief Engineer as quickly as he did because Woythal's employment ended. This incident is more coincidental and innocent than orchestrated and sinister, as Woythal insists. We do not think a reasonable jury would be convinced that Seifert and Carico planned this turn of events in advance.

Thus, Woythal cannot succeed in showing that Tex–Tenn's reasons for his departure from that company are pretext for age discrimination. Even assuming that he was fired, we find no concrete evidence of intentional age-based discrimination. The district court's grant of summary judgment in Tex–Tenn's favor is AFFIRMED.