Ronald STRUHAR, Plaintiff,

v.

CITY OF CLEVELAND, Defendant.

No. 1:97–CV–00887.

United States District Court,
N.D. Ohio,
Eastern Division.

May 29, 1998.

Michael Shafran, Cleveland; OH, for Plaintiff.

Heather D. Graham–Oliver, City of Cleveland, Department of Law, Cleveland, OH, for Defendant.

## OPINION AND ORDER

GWIN, District Judge.

On April 13, 1998, Defendant City of Cleveland filed a motion for summary judgment [Doc. 18]. In his complaint, Plaintiff Struhar states two claims: Count I seeks recovery of medical monitoring and response costs under the Comprehensive Environmental Response Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.;* Count II seeks damages under applicable Ohio law, specifically Ohio Revised Code Title 37. Defendant City of Cleveland seeks judgment on all claims and allegations of the complaint to the extent brought under CERCLA.

In ruling on the instant motion, the Court decides whether the Cleveland Department

of Port Control is a liable party under CERCLA. The Court also decides whether CERCLA entitles Plaintiff Struhar to privately sue for medical monitoring costs. For the reasons that follow, the Court grants Defendant City of Cleveland's motion for summary judgment on Struhar's claim for costs under CERCLA (Count I). The Court dismisses without prejudice Struhar's state claim for damages under state law (Count II).

## I

Plaintiff Ronald Struhar, an employee of the City of Cleveland, Department of Port Control, is a firefighter at Hopkins International Airport ("Airport") and Burke Lakefront Airport in Cleveland, Ohio. Struhar contends that Defendant City of Cleveland knowingly released hazardous materials into a dump site at the Airport, and that Cleveland exposed him to these dangerous chemicals while doing live-fire drills at the Airport.

During the 1980s, Hopkins Airport had two special purpose sites on its premises. One was an area used to train firefighters (the "burn pit"),[1] and the other was used to bury discarded barrels and drums (the "excavation site"). The Defendant City created the excavation site at the end of the northeast/southeast runway in March 1988. In it, the City placed approximately 140 barrels that Cleveland buried in a pit during a scheduled cleanup of Airport debris. While most of the drums were empty, the Ohio Environmental Protection Agency ("EPA") did tests that showed that several barrels contained traces of paint, cleaning solvents and fuels.[2]

The City conducted a risk assessment under Ohio EPA guidelines and concluded that the trace amounts did not pose any significant risks to humans or to the environment. The City also did a risk assessment of the

burn pit under Ohio EPA guidelines and likewise concluded that the trace amounts of chemicals left at the site posed no risk.

Plaintiff Struhar sues the City of Cleveland for physical injury resulting from alleged exposure to hazardous chemicals. Struhar contends that he came into contact with such chemicals during his participation in burn pit drills.

## II

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court will draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 256 (6th Cir.1998).

Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evi-

---

1. The burn pit was a separate 6000 square foot site used for live-fire drills in compliance with Federal Aviation Administration ("FAA") training requirements. Fuel was poured into the pit and ignited to simulate aircraft fires, and firefighters practiced extinguishing them. After the FAA ceased requiring live-fire training, the site was covered with dirt and grass was planted on top of it, and no such drills have taken place at the Airport since the early to middle 1980s.

2. The Ohio EPA ordered the Airport to remove the barrels from the excavation site only one week after they were buried. The drums containing liquids or soil were then tested for hazardous chemicals, and the testing revealed low concentrations of fuel products in the drums. Similar tests on nearby soil and water samples also revealed trace amounts of fuel chemicals.

dence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* supra at 251–52, 106 S.Ct. 2505.

### III

Defendant City of Cleveland says it is entitled to summary judgment for two principal reasons: (1) the Department of Port Control is not a liable party as defined in CERCLA; and (2) both the statute and relevant case law show that CERCLA does not provide a private right of action to recover costs for medical monitoring.

Upon review of the record, the Court finds that summary judgment is appropriate. First, the City of Cleveland is not a liable party under CERCLA because there is no evidence it intended to dispose of the trace chemicals remaining in the buried drums. Second, Plaintiff's medical monitoring fund claim independently fails because there is no private cause of action to recover medical monitoring costs under CERCLA.

### IV

■ In 1980, Congress enacted CERCLA to "initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites."[3] Congress has not designed CERCLA "to make injured parties whole or to create a general vehicle for toxic tort actions. Rather, the act is fashioned to spend, in a cost effective and environmentally sound manner, the limited funds available for the exorbitant costs of a cleanup action." *Ambrogi v. Gould, Inc.,* 750 F.Supp. 1233, 1238 (M.D.Pa.1990). One mechanism to achieve efficient environmental cleanups is CERCLA's private cost recovery action.

■ To establish a claim under a CERCLA private cost recovery action, a claimant must prove four elements: (1) the site in question must be a "facility" as defined in 42 U.S.C. § 9601(9);[4] (2) a "release" or threatened release of a hazardous substance must occur at the facility;[5] (3) the defendant must fall within a category of "liable parties" set forth in 42 U.S.C. § 9607(a);[6] and (4) the "release" or threatened release must cause the plaintiff to incur "necessary response costs" which are consistent with the National Contingency Plan, 40 C.F.R. § 300 *et seq.* *See Stychno v. Ohio Edison Co.,* 806 F.Supp. 676, 679–80 (N.D.Ohio 1992).

■ CERCLA imposes liability upon "any person who by contract, agreement, or otherwise arranged for disposal or treatment ... of hazardous substances...." 42 U.S.C. § 9607(a). Although CERCLA does not specifically define the phrase "arrange for," the Sixth Circuit has held that to establish arranger liability under CERCLA, a party must have actual intent to dispose of the chemi-

---

3. H.R.1016, 96th Cong., 2nd Sess., pt. 1, at 22, reprinted in 1980 U.S.C.C.A.N. 6119, 6125.

4. CERCLA defines "facility" as:
   (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.
   42 U.S.C. § 9601(9).

5. A "release" is defined under CERCLA to mean "any spilling, leaking, pumping, pouring, emitting, emptying, discharge injecting, escaping, leaching, dumping, or disposing into the environment ...." *Covalt v. Carey Canada Inc.,* 860 F.2d 1434, 1436 (7th Cir.1988). "Environment" is defined as:
   (A) the navigable waters, the waters of the contiguous zone, and the ocean waters of which the natural resources are under the exclusive management authority of the United States under the Magnuson Fishery Conservation and Management Act [16 U.S.C. § 1801 *et seq.*] and (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United. States.
   42 U.S.C. § 9601(8).

6. The four categories of "liable parties" outlined in 42 U.S.C. § 9607(a)(1) –(4) include: (1) present owners and operators of a facility; (2) past owners and operators of a facility at the time of disposal; (3) arrangers for disposal or treatment; and (4) transporters.

cals. *United States v. Cello–Foil Prods., Inc.,* 100 F.3d 1227 (6th Cir.1996).

In *Cello Foil,* the defendant manufacturer allegedly arranged for the disposal of used barrels containing trace amounts of chemicals. After Cello–Foil returned the barrels to its supplier, the supplier rinsed the drums and dumped their contents onto the ground, by that contaminating it. In deciding the manufacturer's liability under CERCLA, the court observed that although CERCLA is a strict liability statute, courts must "inquire into what transpired between the parties and what the parties had in mind with regard to disposition of the hazardous substance." *Id.* at 1231. The court stated that "including an intent requirement into the 'otherwise' arranged' concept logically follows from the structure of the arranger liability provision." *Id.* Accordingly, the court concluded that the requisite inquiry in CERCLA cases is "whether the party intended to enter into a transaction that included and 'arrangement for' the disposal of hazardous substances." *Id.*

The *Cello–Foil* intent requirement follows the positions taken in other judicial circuits. In *Amcast Indus. Corp. v. Detrex Corp.,* 2 F.3d 746 (7th Cir.1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994), the Court of Appeals for the Seventh Circuit reasoned that although CERCLA "defines disposal to include spilling, the critical words for present purposes are 'arranged for'. The words imply intentional action." *Id.* at 751. The court further explained:

> In the context of the operator of a hazardous-waste dump, "disposal" includes accidental spillage; in the context of the shipper who is arranging for the transportation of a product, "disposal" excludes accidental spillage because you do not arrange for an accident except in Aesopian sense illustrated by the stated accident.

*Id.*

The plaintiff in *Amcast* operated a copper fittings plant, and the defendant sold and delivered a hazardous substance for use in the manufacture of copper fittings. During several deliveries the defendant accidentally spilled the hazardous substance on the plaintiffs' property, and the plaintiff filed a CERCLA cost recovery action seeking compensation for the resulting contamination of its property. The court concluded that a defendant does not "arrange for disposal" under 42 U.S.C. § 9607(a)(3) when it only arranges for the delivery of the hazardous substance and not for the accidental spilling. *Id.*

■ Applying *Cello–Foil* and *Amcast* to the instant case, the Court finds that to succeed on his claim, Plaintiff Struhar must first produce evidence showing that the City of Cleveland intentionally sought to dispose of the hazardous substances within the barrels at the Airport's excavation site. Struhar must then show he was in fact harmed as a direct result of the City's actions. Plaintiff Struhar fails to produce such evidence. In fact, the evidence suggests that the Airport intended to bury the barrels only as part of a general cleaning plan.

Furthermore, no evidence shows that the City specifically sought to dispose of the trace chemicals remaining in the barrels. Unlike in *Cello–Foil,* where they returned up to ten gallons of chemicals to the supplier for disposal, the barrels at the Airport contained only residual amounts of chemicals. Because Plaintiff fails to introduce evidence showing that Defendant City of Cleveland intended to dispose of chemical waste, the Court finds that insufficient evidence to support Plaintiff Struhar's claim that the City of Cleveland intentionally arranged to the disposal of hazardous chemicals.

## V

■ Even if Plaintiff could establish the City as a liable party under CERCLA, his claim for medical monitoring costs independently fails because CERCLA does not provide a private right of action for recovery of medical monitoring costs. Private parties may not themselves establish a medical monitoring fund under CERCLA. Nor may private parties recover monitoring costs as costs of recovery. Judicial interpretation of "costs of recovery" and CERCLA's separate funding provisions governing medical monitoring costs both provide that "costs of recovery" under CERCLA do not include medical mon-

itoring costs. Rather, the authority to create such a fund rests solely with the Agency for Toxic Substances and Disease Registry ("ATSDR").

ATSDR was created by CERCLA, 42 U.S.C. § 9604(i), to evaluate both actual and potential releases of hazardous substances. *See Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1536 (10th Cir.1992). CERCLA permits the agency to do health assessments, epidemiological studies, and long term health surveillance at any site where they may have exposed the public to the release of a hazardous substance. 42 U.S.C. § 9604(i). CERCLA provides that the parties held liable for such contamination are responsible for "the costs of any health assessment or health effects study carried out [by ATSDR] under Section 9604(i) of this title." 42 U.S.C. § 9607(a)(4)(D). Thus, CERCLA authorizes ATSDR alone to recover medical monitoring costs because 42 U.S.C. § 9604(i) assumes that only ATSDR will conduct health studies.

█ In addition, judicial interpretation of "response" shows that private parties may not recover medical monitoring costs as costs of response under CERCLA. Although a party might argue that CERCLA permits, by "remedial" or "removal" actions,[7] recovery of medical monitoring costs as "any other necessary costs of response," courts have traditionally rejected this argument.

We should not interpret CERCLA's "costs of response" provision so broadly as to include medical monitoring costs. In *Daigle v. Shell Oil Co.*, 972 F.2d 1527 (10th Cir.1992) the Tenth Circuit Court of Appeals rejected such a broad construction of "costs of response." The court explained that CERCLA expressly limited the definition of "remedial action" to actions that "prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment." *Id.* (citing 42 U.S.C. § 9601(24)). The court also deter-

mined that the term "monitor," in a "removal" action under CERCLA, relates only to an evaluation of a "release or threat of release of hazardous substances." *Id.* (citing 42 U.S.C. § 9601(23)). Construing the terms as related above, the *Daigle* court held that private medical monitoring costs are not recoverable because they are unrelated to evaluating the extent of a release or preventing contact between hazardous substances and the environment.

Additionally, the definition of "removal" as including "such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare" must be read through the specific examples of "removal" actions listed in the definition. *See id.* (citing *Ambrogi v. Gould, Inc.*, 750 F.Supp. 1233, 1247 (M.D.Pa.1990)). As the *Daigle* court observed, "[l]ong-term health monitoring of the sort requested by Plaintiffs—'to assist plaintiffs and class members in the prevention or early detection and treatment of chronic disease'—clearly has nothing to do with preventing contact between a 'release or threatened release' and the public. The release has already occurred." *Id.*

Furthermore, the existence of separate funding provisions in CERCLA shows that response costs do not encompass long-term medical monitoring. 42 U.S.C. § 9607(a)(4)(D) provides funding for ATSDR health assessments and health effects studies while 42 U.S.C. § 9607(a)(4)(A) separately provides for government response cost recovery for "removal" and "remedial actions." If Congress had intended response costs to include medical monitoring, the separate funding provision for ATSDR's recovery of health effects studies costs would be rendered superfluous. Such an interpretation of "costs of response" must be avoided to give effect to each subsection, word, and phrase in the statute. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 36, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). Accordingly, following the Tenth Circuit's decision in *Daigle*, this

---

**7.** The term "response" is defined as "remove, removal, remedy, and remedial action ..." 42 U.S.C. § 9601(25). "Removal" actions are those that are taken to provide temporary solutions to contamination and include "the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public

health or welfare...." 42 U.S.C. § 9601(23). "Remedial actions," by contrast, provide a permanent solution to contamination and include "any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment...." 42 U.S.C. § 9601(24).

Court concludes that Congress did not intend to grant claimants a private right of action for recovery of medical monitoring costs.

## VI

In opposing Defendant City of Cleveland's motion for summary judgment, Plaintiff Struhar argues that summary judgment is inappropriate because Defendant City of Cleveland's motion is procedurally flawed. Specifically, Struhar contends that the City's motion fails because sworn affidavits or other factual documentation does not support it as required by Fed.R.Civ.P. 56. Plaintiff's argument is misguided.

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court ruled that the moving party is not required to affirmatively prove that the other's factual assertions are wrong. Instead, a party is entitled to summary judgment whenever "the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof." *Id.* at 322, 106 S.Ct. 2548. Cleveland is not required to introduce evidence that it did not intend to dispose of the trace chemicals remaining in the barrels. It is only required to show that Struhar's evidence does not show otherwise.

Furthermore, Fed.R.Civ.P. 56 does not require that a summary judgment motion be accompanied by evidentiary materials. Subsection (b) of Rule 56 provides that a party "may, at any time, move *with or without supporting affidavits* for a summary judgment in the party's favor...." Fed. R.Civ.P. 56(b) (emphasis added). The Supreme Court has recognized that supporting factual documentation is unnecessary where there is "a complete failure of proof concerning an essential element of the nonmoving party's case" because "all other facts [are rendered] immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Because Struhar has failed to establish the liability element of his CERCLA claim, factual documentation from Defendant City of Cleveland is unnecessary.

## VII

Having addressed Plaintiff Struhar's claim under CERCLA, the Court now considers his remaining claims under Ohio state law. In doing so, the Court finds no independent basis for jurisdiction. Under the doctrine of "pendent" jurisdiction, a federal court is permitted to entertain state claims which would otherwise lack subject matter jurisdiction so long as the state claim is "joined" with a related federal claim. Both the federal and the state claim must "derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Because pendent jurisdiction is principally associated with federal question jurisdiction, where the existence of a federal claim supports jurisdiction of a pendent state claim, disposition of the federal claim allows a district court to exercise its discretion to allow any unresolved state claims to be heard in the state courts. 28 U.S.C. § 1367. Therefore, having resolved Struhar's federal claim, the Court dismisses Plaintiffs Struhar's remaining state claims without prejudice so that he may pursue them in state court.

For the reasons set forth above, the Court finds summary judgment appropriate. Accordingly, the Court grants Defendant City of Cleveland's motion for summary judgment on Plaintiff Struhar's claims arising under CERCLA.

IT IS SO ORDERED.