**Michael D. MILLER, Plaintiff,**

v.

**VILLAGE OF BOSTON HEIGHTS, et al., Defendants.**

**No. 5:99–CV–431.**

United States District Court, N.D. Ohio, Eastern Division.

Aug. 20, 1999.

James C. Watson, Brecksville, OH, for plaintiff.

Todd M. Raskin, Kimberly A. Brennan, Mazanec, Raskin & Ryder, Solon, OH, for Boston Heights, the Village of, Officer Mckittrick, John Doe, Police Officer, John Doe, defendants.

## OPINION AND ORDER

GWIN, District Judge.

On July 22, 1999, the defendants collectively filed a motion for summary judgment in this excessive force case. [Doc. 19]. Defendants Village of Boston Heights and Brad McKitrick, a Boston Heights police officer, maintain no genuine issue of material fact exists regarding Plaintiff Michael Miller's § 1983 claims for violation of his civil rights. Defendants also contend

that the applicable statute of limitations bars Miller's state law claims of assault and battery.

Having reviewed the defendants' motion, the Court denies in part and grants in part the defendants' motion for summary judgment. For the reasons that follow, the Court finds that material issues of fact exist regarding plaintiff's § 1983 claim against Officer McKitrick. However, the Court grants that part of the defendants' motion seeking to dismiss the plaintiff's claims against the Village of Boston . Heights under § 1983 and against Officer McKitrick for assault and battery.

## I.  Background

On March 1, 1997, while on patrol for Defendant Village of Boston Heights, Defendant Officer McKitrick received a radio communication concerning a blue Ford Escort stolen from a parking lot in Cuyahoga Falls, Ohio. The radio report, provided by Captain Morgan of the Peninsula Police Department, included the stolen vehicle's license plate number and a description of the suspect driving the vehicle. Captain Morgan explained in the report that he did not know whether the suspect had a weapon.

After receiving Captain Morgan's report, Officer McKitrick observed a blue Ford Escort traveling north on State Route 8. The vehicle's license plate number and the appearance of its driver matched the information provided by Captain Morgan. Plaintiff Miller was driving the vehicle.

Officer McKitrick maneuvered his patrol car to the right of Miller's vehicle, which had stopped at a red light at the intersection of State Route 8 and Boston Mills Road. Exiting the patrol car with his weapon drawn, Officer McKitrick yelled for Miller to turn off and exit the vehicle. While the parties do not dispute that Officer McKitrick ordered Miller out of the vehicle, the parties do dispute the events that followed McKitrick's initial approach toward Miller's vehicle.

According to Officer McKitrick, Miller ignored his order to exit the vehicle and instead reached down toward the floor of the vehicle. Believing that Miller was reaching for a weapon, Officer McKitrick claims that he ordered Miller to place his hands on the steering wheel. McKitrick says that after initially complying, Miller allegedly twice more moved his hands toward the floor. Officer McKitrick says that on both occasions he instructed Miller to make his hands visible. As Miller reached down a final time, Officer McKitrick claims that Miller's vehicle moved forward and to the right. Officer McKitrick states he was standing on the right side of the vehicle when it began to move.

Officer McKitrick then fired two rounds into the moving vehicle. Claiming he was about to be trapped between the moving traffic on State Route 8 and a vehicle driven by an apparently armed suspect, Officer McKitrick contends that he feared for his life and thus fired in self-defense.

After firing the shots, Officer McKitrick observed Miller's vehicle move toward the left and then stop. Miller then emerged from the vehicle and told Officer McKitrick that he had been shot. Miller received medical treatment at the scene and later was taken by helicopter to the Metro-Health Center in Cleveland.

Miller's account of the circumstances surrounding the shooting differs in two important respects. First, Miller claims that he never reached toward the floor of his vehicle. Instead, Miller asserts that he kept his hands on the steering wheel until Officer McKitrick shot him. Second, Miller claims that he never moved his vehicle to the right, but instead moved his vehicle to the left, and thus away from Officer McKitrick, in an attempt to flee the scene.

Miller now sues Officer McKitrick and the Village of Boston Heights for constitutional violations and state tort claims arising from the alleged use of excessive force during his arrest. The Court now considers the defendants' motion for summary judgment.

## II.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, summary judgment will be ren-

dered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of the motion, this court will draw all justifiable inferences from the evidence presented in the record in the light most favorable to the nonmoving party. *See Woythal v. Tex–Tenn Corp.,* 112 F.3d 243, 245–46 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections,* 141 F.3d 252, 256 (6th Cir.1998) (same).

### III. Discussion

### A. § 1983 Claim and Qualified Immunity

■ Plaintiff Miller sues Officer McKitrick under § 1983, claiming that McKitrick violated his constitutional right to be free from excessive force during his arrest.[1] In response, Officer McKitrick maintains that he did not violate Miller's constitutional rights. Moreover, even if the Court does find a constitutional violation, Officer McKitrick asserts that he is immune from liability under the doctrine of qualified immunity.

1. Plaintiff Miller asserts a § 1983 claim against Officer McKitrick in his individual capacity. (*See* Pl.'s Compl. ¶ 10.) The parties agree that Officer McKitrick is not subject to suit under § 1983 in his official capacity. (*See* Defs.' Mot. Summ. J. at 5 [Doc. 19]; Pl.'s Resp. Defs.' Mot. Summ. J. at 1–2.)

■ Generally, government officials performing discretionary functions have qualified immunity "shielding them from civil damages liability as long as their actions could reasonably have been thought to be consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The law intends the general rule of qualified immunity to give government officials the ability to reasonably anticipate when their conduct may lead to liability for damages. *See id.* at 646, 107 S.Ct. 3034. Where a public official's "duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citation and footnote omitted).

■ Whether or not qualified immunity exists in a given case is a legal question for the court, unless there is a genuine issue of material fact regarding whether the defendant actually committed acts that would violate a clearly established right. *See Monday v. Oullette,* 118 F.3d 1099, 1102 (6th Cir.1997). The plaintiff bears the ultimate burden of proof to establish that the defendant is not entitled to qualified immunity. *See Wegener v. City of Covington,* 933 F.2d 390, 392 (6th Cir. 1991).

■ In a § 1983 action, the first step in a qualified immunity analysis is to decide whether, based on the applicable law, a constitutional violation has occurred. *See Dickerson v. McClellan,* 101 F.3d 1151, 1157 (6th Cir.1996). Here, Miller alleges that Officer McKitrick violated his Fourth Amendment right to be free from excessive force during his arrest.[2] Even when a

2. Plaintiff also alleges that Officer McKitrick violated his Fifth and Fourteenth Amendment rights under the United States Constitution. However, in *Graham v. Connor,* the United States Supreme Court held that a § 1983 claim arising from alleged excessive force during an arrest "is most appropriately characterized as one invoking the protections of

police officer has probable cause to seize an individual, the officer may only use a reasonable amount of force when effecting the arrest. *See Monday,* 118 F.3d at 1104 (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The Court analyzes claims of excessive force under the Fourth Amendment under an objective reasonableness standard. *See Smith v. Freland,* 954 F.2d 343, 345–47 (6th Cir.1992).

■■■■ The Fourth Amendment's objective reasonableness test cannot be defined precisely or applied mechanically. *See Monday,* 118 F.3d at 1104 (citing *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). To properly apply the test, the court must pay careful attention to the facts and circumstances of each case. *See id.* Of particular relevance is whether the suspect posed an immediate threat to the safety of the officer or others and whether the suspect was actively resisting arrest or attempting to escape arrest by fleeing. *See id.* Appropriately, courts assess reasonableness from the perspective of the reasonable officer on the scene, not with the benefit of hindsight. *See id.* (citing *Graham,* 490 U.S. at 397, 109 S.Ct. 1865). If, upon applying this test, the court determines that no constitutional violation has occurred, then the court need go no further.

■■■■ If, however, the court determines there was a constitutional violation, it must go on to the next step of the qualified immunity analysis. *See Dickerson,* 101 F.3d at 1158. This step requires the court to decide whether the violation involved "clearly established constitutional rights of which a reasonable person would have known." *Id.* at 1158 (citation omitted). To be "clearly established," the right allegedly violated must be defined in a particularized and relevant sense rather than on a general level. *See Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. "The contours of the right must be sufficiently

clear that a reasonable official would understand that what he is doing violates that right." *Id.* It is not necessary that the conduct was previously held unlawful, but considering the pre-existing law the unlawfulness of that conduct must be apparent. *See id.*

■■■■ If it is determined that the right is clearly established, then the court must determine whether the plaintiff has alleged sufficient facts, supported by sufficient evidence, to show that the accused officer's conduct was "objectively unreasonable in light of the clearly established constitutional rights." *Dickerson,* 101 F.3d at 1158 (citation omitted).

Applying the three-step analysis set forth above, the Court must first determine whether a constitutional violation has occurred. Specifically, the court must consider whether Officer McKitrick's use of deadly force in arresting Miller was reasonable.

Officer McKitrick asserts that his use of deadly force against Miller was reasonable because he feared for his own life. Whether Officer McKitrick reasonably feared imminent death depends on the extent of the threat posed by Miller. However, the extent to which Miller posed a threat to Officer McKitrick remains in dispute. First, the parties contest whether Miller suspiciously moved his hands, to lead Officer McKitrick to reasonably conclude Miller had a weapon. Second, the parties contest whether Miller threatened Officer McKitrick with his vehicle. These material factual disputes prevent the Court from finding Officer McKitrick's use of deadly force reasonable as a matter of law.

■■■■ Unable to conclude that no constitutional violation has occurred, the Court must move to the second step of the qualified immunity analysis. This step requires the Court to decide whether the alleged constitutional violation involved a clearly

the Fourth Amendment...." 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Thus, the Court analyzes Miller's § 1983

claim as alleging only a violation of the Fourth Amendment, made applicable to the states through the Fourteenth Amendment.

established constitutional right of which a reasonable person would have known. The right to be free from the use of excessive force is clearly established under the Fourth Amendment for purposes of a claim of qualified immunity. *See Graham*, 490 U.S. at 395, 109 S.Ct. 1865.

Having found a potential constitutional violation of a clearly established right, the Court must now consider the final step of the qualified immunity analysis. For purposes of an excessive force case, this final step mirrors that of the first step, because both inquiries concern the objective reasonableness of the police officer's actions. As discussed above, whether Officer McKitrick acted reasonably in using deadly force to arrest Miller depends on the existence of facts presently in dispute. Therefore, the Court cannot find the defense of qualified immunity applicable as a matter of law.

Miller has offered evidence sufficient to raise a genuine and material factual dispute regarding both the existence of a constitutional violation and the applicability of the qualified immunity defense. Consequently, the Court denies summary judgment with respect to Miller's § 1983 claim against Officer McKitrick.

### B. Municipal Liability

▆▆ Plaintiff Miller sues Defendant Village of Boston Heights under § 1983, alleging that the Village has maintained a policy or custom of improperly investigating citizen complaints and inadequately training and supervising its police officers. Miller alleges that these policies or customs exhibit deliberate indifference to the constitutional rights of persons in Boston Heights, and caused the alleged unconstitutional. use of excessive force by Officer McKitrick. The Village of Boston Heights responds by giving evidence showing that it properly investigates citizen complaints and adequately trains and supervises its police officers.

The language and the legislative history of § 1983 compel the conclusion that Congress did not intend a local government to be held liable solely because it employs a tortfeasor. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipal liability under § 1983 cannot be based on the traditional respondeat superior theory. *See id.* Absent a finding that the alleged constitutional violation was a result of a policy or custom of the municipality, the local government as an entity cannot be held liable. *See id.* at 694, 98 S.Ct. 2018.

If Miller suffered a constitutional violation, there is no genuine dispute whether the alleged violation was a result of the policies or customs of the Village of Boston Heights. Evidence offered by the Village of Boston Heights shows that it properly investigated complaints and trained and supervised its police force. Yet, despite being given ample time by the Court to discover information regarding his claim,[3] Miller has failed to produce any evidence to rebut the evidence offered by the Village of Boston Heights.

In response to Miller's claim that citizen complaints of police misconduct are inadequately or improperly investigated, the Village of Boston Heights offers the affidavit of its police chief, Joseph Varga. Chief Varga testifies that the Village of Boston Heights Police Department investigates all claims of police misconduct promptly and professionally. The Village of Boston Heights Police Department does not tolerate any substantiated acts of misconduct, according to Chief Varga's testimony. Miller offers no evidence to rebut this evidence, and instead states in his deposition testimony that he lacks any personal knowledge with respect to complaint investigations.

The Village of Boston Heights also offers Chief Varga's testimony in response to Miller's allegation of inadequate police officer training and supervision. Chief

---

**3.** The Court granted Plaintiff Miller's motion requesting additional time to respond to de-
fendants' motion for summary judgment on July 22, 1999.

Varga testifies that Boston Heights trains all police officers, including Officer McKitrick, with respect to police policies and procedures, including those regarding the use of deadly force and the discharge of firearms. Failure to follow these procedures, according to Chief Varga's testimony, subjects a police officer to potential firing. Chief Varga further testifies that Boston Heights requires all officers, including Officer McKitrick, to comply with state-mandated recertification requirements.

Besides Chief Varga's affidavit, the Village of Boston Heights offers excerpts from its policy regarding the use of deadly force by police officers:

IV. Use of Deadly Force:

A. Self-defense: an officer may use deadly force in self-defense if said officer is in fear that he will immediately lose his life or sustain bodily harm. He must have bond-belief [sic], based upon reasonable grounds that the imminent danger will result in his loss of life or serious bodily harm and that his only means of survival is through the use of such a force. An officer has no duty to retreat "to the wall" in order to use deadly force in self defense: in fact as an officer of the law, he is under duty not to retreat.

B. Use of deadly force to protect others: officers may use deadly force to protect another person from imminent death or serious bodily injury there [sic] must not be any other defense available. The officer must have a bona-fide belief with reasonable grounds, that the victim is imminent of death or serious bodily injury. The use of deadly force by the officer is justified only if the person he is protecting would have been justified in using such force in his defense. The officer may not use deadly force against a misdemeanant except in situation [sic] of self-defense.

V. Discharging of Firearms: Discharging of firearms is permitted for the following reason only:

1. When a situation where the use of deadly force is warranted.

\*　　\*　　\*　　\*　　\*　　\*

(Aff. of Chief Joseph Varga, Exhibit A.) This policy is fully consistent with the law regarding the use of deadly force as stated herein.

Miller offers no evidence to support his allegation of improper training or supervision of police officers. To the contrary, Miller states in his deposition testimony that he lacks personal knowledge about the Village of Boston Heights Police Department's policies regarding officer training and supervision.

The Village of Boston Heights has shown that it maintains and enforces policies regarding the proper investigation of citizen complaints and the adequate training and supervision of its police force. Because of the lack of evidence to rebut this showing, the Court grants summary judgment with respect to Miller's § 1983 claim against the Village of Boston Heights.

### C. State Law Claims

■ Beyond claiming violations of his constitutional rights, Plaintiff Miller asserts state law claims for assault and battery. Miller claims that Defendant Officer McKitrick's actions were willful, malicious and intentional, and were done with a reckless disregard for Miller's rights and safety.

Ohio Revised Code § 2305.111 sets forth the statutory time limits for bringing actions for assault and battery. Section 2305.111 states:

An action for assault or battery shall be brought within *one year* after the cause of the action accrues. For purposes of this section, a cause of action for assault or battery accrues upon the later of the following:

(A) The date on which the alleged assault or battery occurred;

(B) If the plaintiff did not know the identity of the person who allegedly committed the assault or battery on the

date on which it allegedly occurred, the earlier of the following dates:

(1) The date on which the plaintiff learns the identity of that person;

(2) The date on which, by the exercise of reasonable diligence, he should have learned the identity of that person.

OH. REV. CODE ANN. § 2305.111. (Banks–Baldwin 1994) (Emphasis added).

Applying the above statute to the facts here, the Court finds that the statute of limitations bars Miller's claims for assault and battery. The alleged assault and battery occurred on March 1, 1997, during Miller's arrest. Miller filed this action in federal court on February 25, 1999, almost two years after the alleged incident. Miller has offered no evidence to suggest that he became aware of Officer McKitrick's identity anytime later than the date of his arrest. Thus, the cause of action accrued on March 1, 1997. Because Miller filed his claims outside the one-year statute of limitations provided under Ohio Revised Code § 2305.111, his assault and battery claims are barred.

Accordingly, the Court dismisses Miller's state law claims for assault and battery as untimely filed under Ohio Revised Code § 2305.111. Having decided this, the Court need not address the defendants' related state law immunity defense.

### IV. Conclusion

For the reasons stated herein, the Court grants the defendants' motion for summary judgment with respect to Plaintiff Miller's claims against Defendant Village of Boston Heights under § 1983 and against Defendant Officer McKitrick for assault and battery. The Court denies defendants' motion for summary judgment with respect to Plaintiff Miller's claim against Defendant Officer McKitrick under § 1983.

IT IS SO ORDERED.